[No. 24923.   *En Banc.*   December 10, 1934.]

JAMES MCGUIRE, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.[1]

*Hugo Metzler* and *Phil K. Eaton,* for appellant.

*The Attorney General* and *Browder Brown, Assistant,* for respondent.

MAIN, J.—This is an appeal from a judgment of the superior court sustaining an order of the department of labor and industries relative to the claim of James McGuire, who sustained an injury while engaged in an extrahazardous employment.

The accident happened June 10, 1930. Thereafter, the injured workman presented a claim, which was allowed, and he was paid time loss until May 28, 1931, when the claim was closed, with a finding of perma-

[1]Reported in 38 P. (2d) 266.

nent partial disability of four degrees and an allowance therefor made in the sum of one hundred twenty dollars.

Thereafter, the claimant's appeal to the joint board was allowed, and a hearing was held, at which testimony was taken. The claim was again closed, and a petition for rehearing was presented and granted, and further testimony was taken. All of the testimony was taken before an examiner, and none of it before the joint board. In addition to the testimony taken, the claimant was sent by the department to physicians to be examined, and these physicians reported. After the testimony had been taken and the reports of the physicians received, the joint board sustained the action of the department in closing the claim. The claimant appealed to the superior court, and the judgment, as already indicated, was entered sustaining the department.

As to the manner in which the accident happened, the claimant testified:

"Q. You were working then as a laborer for a contractor? A. Yes. Q. What tool were you working with? A. A jack hammer. Q. What is that operated by? A. Comprest air. Q. How heavy is a jack hammer? A. 125 pounds without the hose attached. Q. What were you doing at that time? A. Cutting a pit for greasing cars, hardpan. Q. In a garage? A. Yes. Q. Working in hard pan? A. Yes. Q. Is that the time you had some sort of an accident? A. I slipt. Q. Did you fall? A. Yes, doubled up with the machine. Q. How far did you slide? A. I should judge two or three feet, something like that. Q. What did you do with the machine? A. I hung onto it, I tried to the best I could. Q. What happened then? A. It threw the machine on my back. Q. Suddenly? A. Yes. Q. Did you have immediate pain? A. Yes. Q. Where was that pain located? A. Right across there. (indicating upper lumbar vertebrae.) Q. Did

you have any pain in your lower back? A. That is the only trouble I have."

█ The testimony and the report of the physicians seem to establish that, at the time of the final hearing, the claimant was totally and permanently disabled on account of an arthritic condition of the spine. If the claimant, prior to the accident, had an arthritic condition of the spine which was active, it may be admitted that the disposition of the claim by the department was correct. On the other hand, if that arthritic condition was inactive or dormant and was lighted up and made active by the injury, then the claimant's condition would be the result of the accident, and not the result of any prior arthritic condition.

In *Hadley v. Department of Labor & Industries,* 174 Wash. 582, 25 P. (2d) 1031, it was said:

"If the claimant, at the time of his injury, was afflicted with the disease of tuberculosis, then the case would be ruled by subdivision (1) of Rem. Rev. Stat., § 7679. On the other hand, if the claimant was not suffering from tuberculosis at the time of the injury, but carried a latent, or quiescent, tuberculous germ or bacilli, and by reason of the injury this was lighted up and made active and his tuberculous condition resulted therefrom, then he would be entitled to compensation. [Citing authorities.]"

In *Ray v. Department of Labor & Industries,* 177 Wash. 687, 33 P. (2d) 375, it was said:

"The fact that the claimant, at the time of the injury, had an arthritic condition which was dormant and inactive, would not justify the refusal of compensation. If that condition was lighted up and made active by the injury, then the condition was the result of the injury, and not of the previous arthritic condition. [Citing authorities.]"

The cases of *Matela v. Department of Labor & In-*

*dustries,* 174 Wash. 144, 24 P. (2d) 429, and *Anderson v. Department of Labor & Industries,* 174 Wash. 702, 26 P. (2d) 77, are to the same effect.

█ Inquiry must then be directed as to whether the claimant's arthritic condition was inactive or dormant at the time of the accident, because, under the authorities cited, if it was inactive or dormant, then his condition was due to the accident, and not to the previous arthritic condition.

August 29, 1930, or about two months and a half after the accident, the chief medical adviser of the department, in a report, stated:

"Radiographs are negative for any great amount of arthritic condition, altho he may have some, but he does not complain of the spine itself, it is the lumbar muscles."

Later, and on October third, the chief medical adviser again reported that there was a definite amount of arthritis in the upper lumbar region, which would indicate that the arthritic condition was progressively getting worse.

Prior to the accident, the claimant had engaged in the hardest kind of manual labor, such as pushing a wheelbarrow filled with cement up an incline, which work he did without suffering any pain or inconvenience. He was, even though fifty-two years of age, robust and vigorous. As to his previous condition, the claimant is supported, not only by the testimony of his wife, but by the testimony of two disinterested witnesses. The medical testimony, so far as it touches the question, is that, if the claimant's arthritis had been active, manual labor would have caused him to suffer pain in his back.

The medical testimony offered by the claimant was to the effect that, prior to the accident, the arthritic condition was dormant or inactive, and that it was

lighted up and made active by the accident. The physicians generally seem to agree that, in many persons of the age of the claimant, there is an arthritic condition which causes no inconvenience until something happens which causes it to become active. Five or six doctors who had examined the claimant, either by report to the department or testimony before an examiner, gave it as their opinion that the claimant's condition was the result of the prior arthritic condition, and that, had it not been for that condition, his disability would have been for a comparatively brief period of time. None of these doctors, however, express any opinion upon the vital question of fact in the case, and that is, whether the arthritic condition prior to the accident was active or inactive.

In answering questions as to the extent of the partial permanent disability resulting solely from the injury, had there been no preexisting arthritis, the doctors necessarily not only passed upon a question of fact, but upon a question of law. Without knowing their opinion on the matter of whether the arthritis was active or inactive prior to the injury, their reports and testimony do not reach the real question in the case. We find no evidence in the case bearing upon the question which overcomes the evidence offered by the claimant, from which it would seem to irresistibly follow that the arthritic condition prior to the accident was dormant or inactive.

It appears to us that from the beginning the department, as to this claimant, proceeded upon an incorrect theory of the law. We recognize that the decision of the department is *prima facie* correct and the burden was upon the claimant to overcome it, and that the claimant has done in this case. In fact, as already indicated, the evidence offered by the claimant upon

the vital issue has not been met by the department. The claimant was entitled to an allowance, under the record in this case, for total permanent disability.

The judgment of the superior court will be reversed, and the cause remanded with direction to the superior court to overrule the order of the joint board and the department disallowing the claim and refer the cause to the department for the allowance of the claim as provided by statute.

MILLARD, MITCHELL, HOLCOMB, GERAGHTY, and BLAKE, JJ., concur.

BEALS, C. J. (dissenting.)—In my opinion, the rather insignificant injury suffered by appellant is not responsible for his present unfortunate condition. As I understand the record, it indicates clearly that, at the time he suffered the fall upon which he bases his claim against respondent, he was suffering from active rheumatism or arthritis, which condition was not "lighted up" by the accident, but simply progressed naturally as it would have done had appellant suffered no injury.

In his first report, appellant simply complained of a strained back, the "slip and fall" not having been referred to by him for many months and after much investigation had been made. Giving appellant's testimony the utmost effect that can be claimed for it, he contends that his feet slipped from under him and that he fell backwards, sliding a short distance down an incline, his body coming to rest in a bent position. The record contains no direct evidence of any impact upon his back.

The department paid appellant time loss for many months, caused him to be treated for his afflictions, and finally found that his failure to make complete

recovery was due to preexisting disease. In my opinion, this finding is supported by the record, and I accordingly dissent from the opinion of the majority.

TOLMAN and STEINERT, JJ., concur with BEALS, C. J.