HELEN SANDERSON, Claimant-Respondent, v. PRODUCERS COMMISSION ASSOCIATION and TRAVELERS INSURANCE COMPANY, Defendants-Appellants, No. 41500—229 S. W. (2d) 563.

Division One, April 10, 1950.

Motion for Rehearing or to Transfer to Banc Overruled, May 8, 1950.

*Lyman Field, Clay C. Rogers* and *Reed O. Gentry* for appellants.

*John J. Cosgrove* and *William D. Cosgrove* for respondent.

██ VAN OSDOL, C.—In this workmen's compensation case, claimant, widow of the employee, appealed to the Circuit Court from the final award of the Industrial Commission of Missouri upon review reversing an award to claimant by the referee of the Division of Workmen's Compensation. The Circuit Court reversed and set aside the finding and final award of the Industrial Commission, and entered a judgment for claimant awarding $12,645. Defendants, Employer and Insurer, have appealed.

Employee was fatally injured after he had finished his day's work at the place of his employment and when he was traveling in his employer's automobile on Employee's usual route from the place of his employment to his home.

The Industrial Commission (Commissioner Lahey dissenting) upon review found the claimant "failed to prove that the death of employee, Charles Laird Sanderson, was the result of an accident arising out of and in the course of his employment with Producers Commission Association, as alleged."

The Circuit Court found from the evidence "as a matter of law, there being no dispute as to the evidence, that the employee, Charles Laird Sanderson, died from accidental injuries received by him on January 14, 1948, which injuries arose out of and in the course of his employment." The sole issue raised in the presentation of claimant's claim was—did the accident, resulting in Employee's injury and death arise "in the course of his employment." Section 3691 R. S. 1939, Mo. R. S. A. § 3691.

██ It is generally held that accident, resulting in injury to an employee, arises "in the course of his employment" when it occurs within the period of his employment, at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment or engaged in doing something incidental thereto. Wahlig v. Krenning-Schlapp Grocer Co., 325 Mo. 677, 29 S. W. 2d 128; Goetz v. J. D. Carson Co., 357 Mo. 125, 206 S. W. 2d 530; Karch v. Empire Dist. Elec. Co., 358 Mo. 1062, 218 S. W. 2d 765; Howes v. Stark Bros. Nurseries & Orchards Co., 223 Mo. App. 793, 22 S. W. 2d 839; Sylcox v. National Lead Co., 225 Mo. App. 543, 38 S. W. 2d 497.

Employee, a hog buyer, was injured about 2:45 p.m., or possibly 3:00 p.m., January 14, 1948, at or near 4519 Harrison Street in Kansas City, when he was driving an automobile belonging to his employer, defendant-appellant Producers Commission Association. Employee died as a result of the injury, January 29, 1948. When he was injured, Employee was proceeding southwardly in Employer's automobile at or near the place where Gillham Road is "joined by or empties into" Harrison Street. The automobile ran into a car parked in front of 4519 Harrison. Employee had worked that day for Employer at the Kansas City stockyards. Forty-fifth and Harrison is north and a little

west of Employee's home, and south and a little east of the Kansas City stockyards. At the time he was injured, Employee was at a point on the way "between the place where he worked and the place where he lived." He was at a point on "the route most of them all take directly to the yards." When employees (including Employee), who worked outside, were through work in the afternoon, "whether it is 12:00 o'clock or six in the afternoon," they were through their regular duties for the day.

Employee was first employed in 1944, and at that time his work was exclusively at the stockyards. When he was originally employed, there was no "talk about transportation at all." In the spring of 1946, he was put in charge of Employer's stations at Malta Bend and Sedalia. Employee drove daily to these points from Kansas City in an automobile belonging to and furnished by Employer. The stations at Malta Bend and Sedalia were closed in October 1947. Employee continued to use the automobile in driving to and from his work at the stockyards, and in making probably eight or ten trips into the country to locate marketable hogs, and to solicit the shipment of hogs to the Kansas City market. These trips into the country were made in October, November, December, 1947, and the last, a "good will" trip to Malta Bend, was made on January 9th or 10th, 1948, four or five days before Employee was injured.

Employer paid for the oil and gasoline used by Employee in his operation of the automobile owned and furnished by Employer. At night, Employee kept the automobile in the driveway or in the garage at his home. The automobile was one of four owned by Employer.

Employer's manager, called to the witness stand as a witness for claimant, testified, "Mr. Sanderson primarily arrived at work about 6:30 or 7:00 o'clock (occasionally in busy seasons as early as 6:00 o'clock) in the morning and he came to the Kansas City stockyards to work from his home and we allowed him to take this car home to come on down at that hour which might be earlier than some of the sales staff and his department arrived on the job to get the preliminary duties of the day's work accomplished. . . ." "Q. When he took the car to and from work was that for any company purpose whatsoever? A. No, . . . Q. When you permitted him to take this car home was part of that for his convenience in getting to work in the morning at that time? . . . A. Partly, yes, sir, because we allow that in other departments as well. . . . Q. When he was using the car solely to get himself from the yards to his home and back in the morning was that on any orders from you or any orders from anybody down at the company? . . . A. We maintained four company cars and we rent two stalls at the stockyards. We have a man today in the sheep department who is doing the same thing now that Mr. Sanderson was then of taking the car home at night and driving it back to work in the morning." Upon being asked whether Employee's use of the automo-

bile "outside of his hours," in going to and from work, was in "connection with personal business or company business," the witness answered, "I say for his personal use." The witness further testified Employer's four automobiles were primarily bought and used for operations in the country, outside the city limits of Kansas City, "calling on and maintaining good will and contact with our patrons."

The difficult question—whether an accident occurring while an employee is riding to and from work in the employer's conveyance is one arising "in the course of" the employment and compensable under workmen's compensation laws—has been considered in the many cases of other jurisdictions cited by the parties, appellants and respondent. The cited cases, and many others, are to be found in the Annotations, 10 A. L. R. 169; 21 A. L. R. 1223; 24 A. L. R. 1233; 62 A. L. R. 1438; 145 A. L. R. 1033.

Section 3695 (c) R. S. 1939, Mo. R. S. A. § 3695 (c), provides that, "Without otherwise affecting either the meaning or interpretation of the abridged clause, 'personal injuries arising out of and in the course of such employment,' it is hereby declared not to cover workmen except while engaged in, or about the premises where their duties are being performed, or where their services require their presence as a part of such service." The Section is not to be construed as unqualifiedly restricting compensable accident and injury to the time the employee is actually working in the performance of his duties on the premises of the employer. The Section has been held to extend the protection of the Workmen's Compensation Law to all employees while in or about *any* premises where they may be engaged in the performance of their duties, and while at *any* place where their services, or any task, or mission which forms a necessary part of their services, may reasonably require them to be. Wahlig v. Krenning-Schlapp Grocer Co., supra; Sylcox v. National Lead Co., supra.

In the Sylcox case the transportation by bus to and from his home was furnished plaintiff by his employer as a part of the consideration for plaintiff's work. Plaintiff had completed his actual labors for the day on the premises of his employer, and was injured when alighting from the bus some four miles distant from the place of his actual labors. In that case transportation was expressly contemplated by the contract of employment, but, in searching for a general statement of the determinative principles applicable to the very problem of the instant case, we have found no more able although summary treatment than that in the following paragraphs quoted from the opinion of the St. Louis Court of Appeals in the Sylcox case, 225 Mo. App., at pages 547-548, 38 S. W. 2d, at pages 499-500,

"Generally speaking, it is the scope of the contract of employment which furnishes the determinative test of whether such an accident is one for compensation. In other words, it is the contract of employment, and not the actual commencement of labor, which establishes the

relationship of the parties under the act. If the right to transportation is given, either positively or inferentially, by the terms of the contract, the employment begins when the employee boards the bus to go to the scene of his labor; it continues throughout the entire period of transportation; and it terminates when he leaves the bus at his home. If the contract provides in express terms for transportation, there is but small room for controversy, but, where its provisions are to be implied from the nature and circumstances of the employment, many considerations may be involved, such as whether the furnishing of transportation was merely an act of courtesy, wholly disassociated and disconnected from the relationship of master and servant; whether the employee received pay for the time spent on the bus; whether the furnishing of transportation was with the knowledge and acquiescence of the employer; and whether the course of the employment may extend beyond the hours of the servant's actual labor, and to places other than the premises upon which his labor is performed.

."Disposing of these questions, the courts hold almost unanimously that, even though the employee is not paid for the time spent on the bus, he is yet in the course of his employment, if he rides by the employer's order, or with his knowledge and acquiescence; that the relationship of master and servant may extend beyond the hours of the servant's actual labor, and to places other than the premises on which he is employed; that the relationship exists whenever the servant is under the master's control, and subject to his directions; that transportation to and from work may well be one of the incidents of the employment, and an accessory, collateral or subsidiary part of the contract; that it is something added to the principal part of the contract, as a minor, but none the less a real, feature or detail of the contract; and that consequently an accident such as the one we have before us should be regarded as compensable, because it occurs within the period of the employment, at a place where the employee has a right to be, and while he is engaged in something incidental to his employment proper, because contemplated by it."

We must determine whether the Commission could reasonably have made its finding from a consideration of all the competent evidence (and we should set the award aside if it is clearly contrary to the overwhelming weight of the evidence). Wood v. Wagner Elec. Corp., 355 Mo. 670, 197 S. W. 2d 647; Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S. W. 2d 55; Scott v. Wheelock Bros., 357 Mo. 480, 209 S. W. 2d 149.

All of the evidence was introduced by claimant, respondent. There was no evidence introduced by Employer and Insurer, defendants-appellants. The finding of the Industrial Commission, in making the award for Employer and Insurer, was not upon the stated ground of the lack of credibility of claimant's witnesses. See Scott v. Wheelock Bros., supra; Doughton v. Marland Refining Co., 331 Mo.

280, 53 S. W. 2d 236. The claimant's witnesses were not contradicted. Although the referee did, the reviewing Industrial Commission did not see and hear the witnesses testify. And the whole record itself discloses no competent evidence of necessity involving the credibility of the witnesses as in the case of Scott v. Wheelock Bros., supra.

We are mindful claimant had the burden of proof upon the contested issue of her claim. Apparently the finding of ▮▮▮ the Commission, that claimant "failed to prove" Employee's fatal injury arose out of his employment, was either a finding of fact upon conflicting reasonable inferences supported by the undisputed testimony of claimant's witnesses upon the issue, or a finding that the testimony of claimant's witnesses, although undisputed, was legally insufficient upon the issue to establish her claim. And the finding of the Commission apparently was not based on the Commission's belief the testimony of claimant's witnesses was false. Scott v. Wheelock Bros., supra. Now the Commission may not arbitrarily disregard and ignore competent, substantial and undisputed evidence of witnesses who are not shown by the record to have been impeached, and the Commission may not base their finding upon conjecture or their own mere personal opinion unsupported by sufficient competent evidence. Scott v. Wheelock Bros., supra; Palm v. Southwest Missouri Wholesale Liquor Co., Mo. App., 176 S. W. 2d 528.

Inferences to be reasonably drawn from the evidence introduced convincingly support the view Employee was using the automobile, not only with knowledge and acquiescence of Employer, but also that the car was furnished to Employee for a purpose clearly associated with the employer and employee relation. No evidence tends to support a conclusion the automobile was furnished as a mere courtesy to Employee, or that it was furnished to and used by him for his own personal benefit exclusively. The inferences are Employee used the automobile in going to and from his work with Employer's knowledge and permission, and at least "partly" in the furtherance of Employer's business.

It would not be reasonable to say Employee's arrival at the stockyards in the morning earlier than the sales staff and other employees of his own department was no advantage or benefit to Employer. The clear implication is that Employer allowed Employee the use of the automobile in traveling to and from his home to enable him to conveniently and promptly arrive in the earlier morning, so that he might do the tasks preliminary to the day's work in the livestock market and thus make his day's service as a hog buyer and the day's service of other employees the earlier ready and available to Employer in the day's market transactions. The circumstances as disclosed by the whole record demonstrate the privilege of use of the car was impliedly added to the principal part of the contract—a minor but real feature

of the contract of employment. His use of the automobile in going to and from his work was surely incidental to his employment proper.

Appellants urge the quoted answer of Employer's manager, "I say for his personal use," was sufficient, substantial and competent evidence in supporting the Commission's finding that claimant "failed to prove" Employee's fatal injury arose in the course of his employment. But it would seem the quoted answer of the witness as well as the answer that the car was being used by Employee in going to and from work for no "company purpose whatsoever" were but conclusions, invading the Commission's trial province, and incompetent and insufficient to support the finding and award for defendants-appellants.

When Employee was fatally injured he was on the usual and direct route from the place where he worked to his home, and the accident was in the afternoon at an hour between the hours when employees of Employer finished their work for the day. From these circumstances it may be reasonably inferred Employee was on his way home from his work. No evidence supports the inference he was then in any deviation of route or on any independent journey for any other and purely personal purpose of his own.

The inferences to be reasonably drawn from the whole record support the legal conclusion Employee's fatal injury was suffered in the course of his employment, inasmuch as there was no factual foundation for a reasonable inference to the contrary.

We agree with appellants' statement it frequently happens that there is no testimony in a case other than that of the plaintiff or claimant himself, but if from that testimony two different conclusions or inferences may be drawn as to the ultimate fact at issue, each of such conclusions or inferences being consistent with the testimony, and each inconsistent with the other, it remains for the triers of the facts to determine the issue and draw the inference and it does not become a question of law. See Ashwell v. United States Seed Co., Mo. App., 167 S. W. 2d 950, at page 952; Scott v. Wheelock Bros., supra.

In the Ashwell case the issue was partial dependency. There was evidence claimant, Clifford W. Ashwell, had been given property and substantial amounts of money by his father, deceased employee. But there also was evidence claimant Clifford (30 years old, weighing 188 pounds stripped, and with no physical disabilities) was the while earning, monthly, $145. The St. Louis Court of Appeals correctly upheld the Commission's final award denying compensation. In the Scott case the issue was dependency. Claimant, mother of deceased employee Ira, and her daughters testified that for more than two years prior to the son's death he had paid claimant ten to fifteen dollars per week; and that claimant had not earned any money, and had no other income. But there were circumstances shown supporting the reasonable conclusion the deceased son Ira could not have contributed

ten to fifteen dollars per week to his mother's support. And the cold record disclosed competent evidence necessitating a judging of the credibility of a witness, that is, an affidavit of claimant stating that she had been employed; that the son had contributed but $40 to her support; and that she had received income from another son, Calvin. The finding of the Commission was one of fact supported by competent and substantial evidence upon consideration of the whole record. In the case of Karch v. Empire Dist. Elec. Co., supra, cited by defendants-appellants, the issues were whether a tick bite caused coronary thrombosis, and, if so, did the injury arise in the course of the employment. There was medical evidence that in the circumstances a tick bite could, and there was medical evidence a tick bite could not cause coronary thrombosis; and evidence tended to show deceased could have suffered the tick bite while performing his duties as an employee at the place of employment; and there was evidence tending to show he could have suffered the tick bite at some other time and place.

In the instant case the Commission's award denying compensation was not, and in the Ashwell, Scott and Karch cases the Commission's awards denying compensation were "supported by competent and substantial evidence upon the whole record." Section 22, Article V, Constitution of Missouri, 1945, Mo. R. S. A. Const. Art. V, § 22.

The judgment should be affirmed.

It is so ordered. *Lozier* and *Aschemeyer*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.