Norman GAVAN, Employee, Respondent.

v.

H. D. TOUSLEY COMPANY, Inc., Employer, and Employers Mutual Liability Insurance Company, Insurer, Appellants.

No. 32018.

St. Louis Court of Appeals.

Missouri.

Sept. 21, 1965.

Edward C. Friedewald, St. Louis, for employer and insurer, appellants.

John J. Relles and Ralph Schnebelen, Clayton, for employee, respondent.

DOUGLAS W. GREENE, Special Judge.

This is an appeal by the employer and insurer, hereinafter called appellants, from a judgment of the Circuit Court of St. Louis County reversing an award of the Industrial Commission of Missouri, denying compensation to claimant-respondent, who had filed for additional compensation, alleging a change in condition, pursuant to Section 287.470 RSMo 1959, V.A.M.S.

Respondent's initial claim was based on an injury to his back arising out of an accident that occurred October 16, 1958, in the course and scope of his employment. Shortly thereafter, he came under the care of Dr. Harold Walters for treatment of his back. Respondent stated that he felt severe pain in the low back towards the left leg at the time of the accident. He continued working, but could not straighten up because of pain for two weeks following the occurrence. He told Dr. Walters that he had pain in the left hip, buttock, and groin. Dr. Walters found tenderness over the left sacroiliac joint, and mid-left buttock area. In 1959, he found straight leg raising caused pain at 75° of horizontal. His diagnosis was strain of the left sacroiliac with possible tearing of ligaments. Dr. Hampton examined respondent for employer in January, 1959, and reported tenderness in the L 4–5 region, but gave no disability rating. As a result of a hearing, the referee, on November 30, 1959, entered an award, finding that respondent sustained an accidental injury on October 16, 1958, arising out of and in the course of his employment, resulting in 5% permanent partial disability of his body as a whole, referable to his left sacroiliac region. This award was affirmed by the Commission, and on appeal by the Circuit Court. In 1961, the respondent filed a motion for additional compensation based upon a change in condition under Section 287.470 RSMo 1959, V.A.M.S. A hearing was held before the Commission on July 29, 1963, at which time the following evidence was introduced.

After the original award, the pain in respondent's back increased. In 1960, he lost about 30 days work because of increased pain in his back. This was the same area that had previously bothered him. In 1961, prior to June 17 of that year, he only worked slightly over one hundred hours. This loss of work was due to increased pain in his back and hip. The pain was in the same area, but it increased in severity. He finally went to Dr. Walters who had examined and treated him in 1958 and 1959. He was examined by Dr. Walters on June 17, 1961. Dr. Walters found tenderness in the soft tissue in the lower part of his back at the region of the first sacral vertebra. The motion of his back was limited to thirty degrees of flexion, and about five degrees of lateral bending and extension. The left ankle jerk was found to be more sluggish than the right. Respondent complained that he was having recurring severe low back pain. The sluggish left ankle jerk and limitation of motion had not existed on previous examinations.

At that time, June 17, 1961, Dr. Walters referred respondent to Dr. Jacques Schaerer, a neurosurgeon. Dr. Schaerer performed a myelogram on respondent on July 3, 1961. His examination of respondent revealed that he walked with a slight limp, with a list to the left; that his ability to bend forward was limited; there was pain going into his left buttock on pressure, and diminished sensation in his left leg. The myelogram findings were compatible with a herniated disc between the fourth and fifth lumbar spaces. Surgery was performed on July 5, 1961. His recovery from surgery for removal of the disc was uneventful and, after discharge, he was seen again by Dr. Schaerer on February 19, 1963. Respondent was walking without limping, could touch his ankles with his fingertips where he could previously touch his knees, his reflexes were normal and he had no areas of diminished sensation. He did have discomfort when he stood up straight, and was unable to do

heavy work like shoveling or pulling cement with a straight edge. Dr. Schaerer was of the opinion that respondent's permanent partial disability after the accident was twenty-five percent of the man as a whole. The charges for the operation, including myelogram, were $900.00, and such charges were reasonable. Dr. Walters saw respondent again in 1963. He had a well-healed scar in the middle of his back along his spine. X-rays revealed that a disc had been removed between the fourth and fifth lumbar space. There was no muscle spasm, and the motion of his back was within normal limits. Dr. Walters rated respondent's permanent partial disability at that time as twenty percent of the man as a whole. In Dr. Walters' opinion, respondent was permanently unable to do heavy work, or to engage in twisting or turning activities. Respondent had no injuries to his back between the time of the original accident, October 16, 1958, and the date of the hearing on change in condition, which was held July 29, 1963. None of the foregoing testimony was disputed.

In addition, in answer to a hypothetical question, assuming the relevant facts in evidence as heretofore stated as true, Dr. Walters was of the opinion that respondent's disability immediately before the operation was a result of the accidental injury of October 16, 1958, and that there was a direct causal relationship between his disability at the time of the hearing on change of condition and the 1958 accident. Dr. Walters found no objective findings of disc involvement in 1958 or 1959, but did in 1961. He testified the left sacroiliac region was approximately two inches from the spot where the operation took place. Dr. Schaerer, in answer to a hypothetical question assuming the relevant facts previously stated, was of the opinion that the condition for which he operated on respondent was the direct result of the October 1958 injury; that pain in the left sacroiliac area, and over the left hip, was directly connected with the disc, and the proof of the matter was when the disc was removed, the pain in the sacroiliac area disappeared. He further stated that the degeneration of the disc was progressive, which was compatible with respondent's history of complaints of pain that grew steadily worse. Appellants' witnesses were two doctors, neither of whom had ever seen the respondent. Dr. A. H. Diehr testified, in answer to a hypothetical question, that, in his opinion, the herniated disc found in 1961 had no connection with the 1958 injury. The hypothetical question gave no assumed facts on respondent's complaints and condition in 1959, 1960, or until May 7, 1961. He also stated that pain is associated with a disc injury; that constant recurrence of low back pain might be a symptom of possible disc injury; that straight leg raising tests being positive at seventy five degrees of horizontal could be a symptom of disc injury, as could pain in the left hip. Appellants' other witness was Dr. Herbert E. Rosenbaum. Dr. Rosenbaum stated he could not say when the herniated disc occurred. He stated that the herniation was an oozing of a gelatinous substance, called nucleus pulposus from the center of the disc through a rent in the fibrous covering of the disc, and if it impinged on a pain sensitive structure such as the root of a nerve, it caused pain. He was given no facts about respondent's condition in 1959, 1960, or until May, 1961.

On the basis of the foregoing evidence, the Commission, on August 30, 1963, entered an order that respondent's application for additional compensation on the ground of a change of condition be denied. The Commission stated that while they found and believed that the herniated disc may well have been caused by the accident, there was no evidence to support such a finding, and to find a causal connection between the accident and the herniated disc would require resorting to conjecture and speculation. Respondent appealed, and on June 24, 1964, the Circuit Court of St. Louis County entered its judgment reversing the Industrial Commission and remand-

ing the cause for further hearing, for the reason that there was not sufficient competent evidence in the record to warrant the making of the award denying respondent's application for additional compensation. An appeal from that judgment was duly filed in this court.

■ The only real issues in this case are, did the condition of the respondent materially change for the worse from November 30, 1959, the date of the original award, and July 29, 1963, the date of the hearing on change of condition, and, if so, was there a causal connection between such change and the 1958 accident. In deciding these questions, this court is required to view the evidence, and the reasonable inferences therefrom, in the light most favorable to the award, and to set the Commission's findings aside only in the event they are not supported by competent and substantial evidence upon the whole record. Wood v. Wagner Electric Corp., 355 Mo. 670, 197 S.W.2d 647.

■ In this case, however, there is no competent and substantial evidence upon which the Commission could have based its award. Respondent's pain in the left sacroiliac region increased in 1960 and 1961 until he was totally disabled prior to his operation. The operation stopped the pain, and enabled him to resume employment, but left him with residual permanent disability, estimated at twenty to twenty-five percent of the man as a whole. There is no dispute about those facts. All of the evidence in this case indicates that respondent's condition did definitely change for the worse from the day of the original award to the date of the operation. This would make mandatory an additional award to respondent for a change in condition, if a causal connection could be proven between the change in condition for the worse, and the original accident. There is nothing in the record to show even a possibility of any intervening injury to which respondent's change in condition could be attributed, such as was present in Welker

v. MFA Central Co-Operative, Mo.App., 380 S.W.2d 481.

The only possible issue left to consider is whether or not there was a causal connection between respondent's condition on July 29, 1963, the date of the hearing on change in condition, and the original accident. The testimony of respondent, of Dr. Walters, who was his treating physician after his accident and who saw him several times over a three-year period, and of Dr. Schaerer, who performed the operation, all so indicated. There was coupled with this a most significant fact that was not disputed, which was, that after the disc operation, the symptoms of pain ceased. On the other hand, Dr. Diehr, who had never seen the respondent, and, who, from the record, had never ever seen any reports, hospital records, depositions, or any other type of evidence or findings, stated that, in his opinion, the herniated disc had no connection with the 1958 injury. On cross examination, he first said the disc herniated in 1961, then said 1960, and finally, that he did not know when the disc herniated. Dr. Rosenbaum, who also had never seen the respondent, said he could not say when the disc herniated, other than at some time in life, but that the symptoms developed prior to the myelogram. He also stated that respondent had evidence suggesting a disc without neurological involvement. He testified he would not exclude the traumatic incident of 1958 as the one which gave rise to the herniated disc.

■ While it is true, that where the issue is chiefly a medical question, the testimony of medical experts amounts to substantial and competent evidence, Coleman v. Brown Strauss Corp., Mo.App., 210 S.W. 2d 537, the testimony of appellants' doctors in this regard falls far short of the minimum standard required by law. In fact, their testimony, when viewed as a whole, and after they were given additional undisputed facts of respondent's condition in 1958, 1959, and 1960, corroborated the find-

ings of respondent's doctors that the 1958 injury eventually caused the herniated disc.

Dr. Diehr's opinion that the disc injury had no connection with the original accident was based on his answer to a hypothetical question posed by appellants' counsel, which question did not even contain the basic undisputed facts of respondent's pain, complaints, loss of work due to pain, and gradual deterioration of respondent's condition in December of 1959, all of 1960, and the period of time before May of 1961.

The hypothetical question asked Dr. Rosenbaum was of the same nature.

■ Facts upon which an expert's opinion is based, must measure up to legal requirements of substantiality and probative force, and the question of whether an opinion of an expert is based on and supported by sufficient facts or evidence to sustain it is a question of law for the appellate court. Craddock v. Greenberg Mercantile, Inc., Mo., 297 S.W.2d 541.

■ If the expert witness does not have personal knowledge of such facts, as was the case with Dr. Diehr and Dr. Rosenbaum, they must be asked, by the use of hypothetical questions, to assume the truth of them. Harp v. Illinois Central Railroad Co., Mo., 370 S.W.2d 387.

■ While it is true that a hypothetical question does not necessarily have to include all of the material facts in evidence, it must fairly hypothesize relevant facts in evidence, and fairly present the questioner's theory. Hunter v. St. Louis Southwestern Ry. Co., Mo., 315 S.W.2d 689.

■■ That was not the case here, and appellants' witnesses' answers to the hypothetical questions referred to herein could only have been based on speculation and conjecture. A verdict, or award, based on such evidence, cannot stand. We hold that the action of the trial court, in reversing the order of the Industrial Commission and remanding the cause for further hearing,

for the reason that there was not sufficient and competent evidence in the record to warrant the making of their award, denying employee's application for additional compensation, on the ground of a change of condition, was proper.

The judgment is affirmed.

WOLFE, P. J., and ANDERSON, J., concur.