DEPENDENTS OF MANUEL CAZIMERO,
DECEASED, Claimants-Appellants, *v.* KOHALA
SUGAR COMPANY, Employer-Appellee, Self-Insured

No. 5229

MAY 17, 1973

RICHARDSON, C.J., MARUMOTO, ABE,
LEVINSON AND KOBAYASHI, JJ.

OPINION OF THE COURT BY RICHARDSON, C.J.

In April of 1969, Manuel Cazimero was selected by Kohala Sugar Company, his employer of three years, to participate in a training program which would have qualified him for the position of Senior Cane Truck Driver. On April 10, after three days of classroom instruction, he entered the practical phase of the program in which he alternated between driving a 10-ton manual shift cane truck and observing his instructor's operation of the vehicle. Following an afternoon rest break and without sound or warning, Mr. Cazimero fell dead.

In accordance with the Workmen's Compensation Law of this state, the widow and the three minor children of the deceased, initiated a claim against the employer

for benefits. The Director of the Department of Labor and Industrial Relations (the Director) took jurisdiction[1] of this claim and ordered the Kohala Sugar Company to pay the cost of hospital services and limited burial expenses as well as weekly benefits.[2]

Subsequently, the employer[3] appealed this decision to the Labor and Industrial Relations Appeals Board (the Board) which proceeded to hear the matter *de novo*.[4] During the course of this hearing, claimants requested that the Board issue a subpoena to Dr. Maurice Silver, a staff medical advisor to the Director.

The claimants believed that Dr. Silver's testimony formed the basis for the Director's award[5] and would have corroborated their position that the cause of Manuel Cazimero's death was a "work-related" injury.

The Board refused claimants' request stating that:

. . . we have a firm policy in this respect. When Dr. Silver has rendered an opinion strictly as a medical advisor and not on the basis of having treated the patient involved in the case or examined him, we have decided that his testimony would be inacceptable to the Board.

They eventually ruled that Mr. Cazimero's death was not a "work injury" and denied compensation to the claimants.

On this direct appeal, pursuant to HRS § 386-88 (Supp. 1972), we are asked only to reverse the Board's ruling regarding the subpoena and prospective testimony of Dr. Silver. The appellee makes no assertion that the proffered testimony would have been irrelevant, immaterial or unduly repetitious nor does it claim that admittance would have tended to leave the Board's con-

---

[1] HRS § 386-73 (Supp. 1972).

[2] Subject to the durational limits of HRS § 386-43.

[3] and [4]. HRS § 386-87 (a) and (b), (Supp. 1972).

[5] Though nothing in the record supports this conclusion, both parties in their briefs agree to it. We will therefore treat it as established.

clusions undisturbed. We are thus concerned solely with the propriety of an administrative agency refusing to hear the testimony of an expert witness because of internal, previously unpromulgated policy reasons.

The claimants' brief attacks the Board's ruling upon the due process guarantees of Article I, section 4 of the Hawaii Constitution and Amendment XIV, section 1 of the United States Constitution. The employer supports the ruling by the proposition that such action was within the Board's discretion and necessary to avoid any appearance of undue influence on its part as well as to preserve the integrity of the internal decision making process of the Department of Labor and Industrial Relations.

We decline to base our decision upon either of these arguments. In our view, the statutory laws of this state negate the necessity of discussing the issue before us in constitutional terms; they also render the employer's position untenable.

The Labor and Industrial Relations Appeals Board is an agency within the definition of the Hawaii Administrative Procedure Act.[6] A contested case heard by it is therefore bound by the proscriptions of HRS § 91-10, *Rules of Evidence; official notice* of which subsection (1) states that:

> Any oral or documentary evidence may be received, but every agency shall as a matter of policy provide for the exclusion of irrelevant, immaterial, or unduly repetitious evidence . . . .

Apparently, the chairman of the Board interprets this subsection as a fiat enabling him to exclude any evidence that he believes should be excluded.[7] We disagree for in

[6] HRS §§ 91-1 et. seq.

[7] Rule 25 (d) of the Board's Rules of Practice and Procedure provides that:

The admission of evidence in a hearing shall be controlled by the chairman or the presiding member in a manner which he considers best suited

our view, the first eight words of this statute must be liberally construed.

Prior to its passage by the legislature of this state in 1961, the Administrative Procedure Act was scrutinized by the Judiciary Committee of the House of Representatives. House Journal, 1st Legislature, SC Rep. No. 8, 653 (1961). At page 659, it issued the following comment on our present HRS § 91-10 (1):

> . . . This subsection has been amended from subsection 10 (1) of the Revised Model Act with the intent that the agency *shall* receive *any* oral or documentary evidence and that the agency as a matter of policy shall provide for the exclusion of irrelevant, immaterial or unduly repetitious evidence [emphasis supplied].

The Revised Model State Administrative Procedure Act of 1961 provided that the rules of evidence to be followed in contested agency cases were to be the same as those applied in nonjury civil cases.[8] Its drafters stated that this was a compromise between allowing agencies to receive any testimonial offer and limiting them to an application of the common law rules of evidence. Handbook of the National Conference of Commissioners on Uniform State Laws, 216 (1961).

We are left with the conclusion that when our legislators departed from the compromise position they moved in the direction of one of the extreme standards avoided by the revisors of the Model Act. The language of the Judiciary Committee indicates that the direction chosen

---

to ascertain the facts and safeguard the rights of the parties.

We see no use for this rule except to govern the orderly introduction of evidence and the exclusion of irrelevant, immaterial and unduly repetitious offerings. If this rule is being otherwise employed then it is inconsistent with today's opinion.

[8]This would have been a difficult standard to adhere to for the majority of states had no written rules governing the admissibility of evidence in nonjury trials. See Gellhorn, Rules of Evidence and Official Notice in Formal Administrative Hearings, 1971 Duke L.J. 1, 12.

was towards the admission of any and all evidence limited only by considerations of relevancy, materiality and repetition.

Were we, however, to decide that they favored the standard of the common law rules of evidence we would also admit the testimony of Dr. Silver. We see no device in the common law which would have kept him away from the witness stand in a similar trial in one of our circuit courts.

We need not, however, rely solely upon the implied intentions of our own state lawmakers. It is inescapable that subsection (1) was not only a deviation from the Revised Model Act but also a verbatim copy of a portion of 5 U.S.C.A. § 1006 (c), the evidence proviso of the Federal Administrative Procedure Act. Thus we may consider the legislative history of that Act as well as the federal case law construing the twin subsection.

The general purpose behind § 1006 (c) [9] of the Federal Act appears to have been to free administrative agencies from the bounds of any technical rules of evidence. 92 Cong. Rec. 2157 (1966) (remarks of Senator McCarran). *See also* Davis, *Evidence Reform: The Administrative Process Leads the Way,* 34 Minn. L.R. 581, 588-591 (1950). That is not to say, however, that administrative agencies were given latitude to exclude evidence that would previously have been admissible. Just the opposite was intended, they were to admit evidence that would have been inadmissible in common law trials. *See e.g., Nadiak* v. *Civil Aeronautics Board,* 305 F.2d 588, 593 (5th Cir. 1962) [10] Moreover, it appears that the federal courts have long admitted the testimony

[9] Now 5 U.S.C.A. § 556 (d).

[10] Most of the difficulties on the federal level have involved question of hearsay admissibility and the weight to be accorded such evidence with the broad conclusion that this evidence should be freely admitted and may be relied upon by an agency if it "... is of a kind on which fairminded men are accustomed to rely in serious matters." Marmon v. Railroad Retirement Board, 218 F.2d 716, 717 (3d Cir. 1955).

of agency consultants and employees. *See Denver Stock Yard Co.* v. *United States,* 304 U.S. 470, 477 (1938); *Roupp* v. *Woods,* 177 F.2d 149, 152 (Emer. Ct. App. 1949); *Rabkin* v. *Bowles,* 143 F.2d 600, 601 (Emer. Ct. App. 1944) (in which the testimony submitted was that of a salaried employee of an agency).

For the reasons stated, we hold that the testimony of Dr. Silver should have been admitted by the Board.

In addition, when an agency is faced with evidence of doubtful admissibility, it is preferable that it allow the admission of such evidence rather than to exclude the same, for the very practical reason stated in *Donnelly Garment Co.* v. *National Labor Relations Board,* 123 F.2d 215, 224 (8th Cir. 1941), as follows: "If the record on review contains not only all evidence which was clearly admissible, but also all evidence of doubtful admissibility, the court which is called upon to review the case can usually make an end of it, whereas if evidence was excluded which that court regards as having been admissible, a new trial or rehearing cannot be avoided." *See also* 3 Larson, Workmen's Compensation Law § 79.10 (1971).

Reversed and remanded.

*Victor Agmata, Jr.* for Claimants-Appellants.

*Robert S. Katz and Michael B. Shane* (*Torkildson, Katz & Conahan* of counsel) for Employer-Appellee.