ANTONIO DE VICTORIA, Claimant-Appellant, *v.* H & K CONTRACTORS, Employer-Appellee, and FINANCIAL SECURITY LIFE INSURANCE COMPANY, Insurance Carrier-Appellee

NO. 5594

JANUARY 22, 1976

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR, JJ., and LANHAM, CIRCUIT JUDGE, IN PLACE OF KIDWELL, J., DISQUALIFIED

OPINION OF THE COURT BY OGATA, J.

This is an appeal pursuant to HRS § 386-88 (Supp. 1974) by a claimant-appellant (hereinafter referred to as claimant) from an adverse decision and order of the Labor and Industrial Relations Appeals Board, denying further medical benefits and compensation for an alleged permanent partial disability. We reverse the decision and order, insofar as it denied such benefits and compensation for claimant's back injury.

On July 7, 1966, claimant, a 48 year old mason tender, was injured while working for employer-appellee, H & K Contractors (hereinafter referred to as employer). His injury was diagnosed by his treating physician, Dr. Leong, as acute lumbo-sacral strain and claimant was treated conservatively. On September 10, 1966, continued conservative symptomatic therapy was recommended by an orthopedic consultant, Dr. Dodge, to whom claimant had been referred by his treating physician. It also became apparent that prior to the accident claimant had contracted osteoarthritis of the lumbar spine. On July 8, 1967, claimant was released by Dr. Leong from further treatment of the injury of July 7, 1966.

That the 1966 injury was a covered work injury within the meaning of HRS § 386-3 was never disputed. Medical benefits through July 8, 1967, were paid by the employer's insurance carrier. Since liability was admitted, no decision awarding compensation was issued. If any order approving

the original disposition of the claim was issued it does not appear in the record.

After claimant was discharged as cured by Dr. Leong, he continued to suffer pain in his back, although not as intensely as on the day of the injury. In December, 1971, he went to see Dr. Dodge who had previously examined him for his back condition. Since then claimant has been treated regularly by Dr. Dodge as his treating physician.

On March 14, 1972, claimant sought additional benefits under workmen's compensation by applying for a review of his case by the Director of the Department of Labor and Industrial Relations pursuant to HRS § 386-89(c) which authorizes such a re-examination "whether or not a decision awarding compensation has been issued." On June 19, 1972, the Director denied further medical services and compensation because he found that the claimant's present physical condition for which the application for review was filed did not result from his 1966 industrial accident.

Claimant appealed the Director's decision to the Labor and Industrial Relations Appeals Board for a hearing *de novo*, pursuant to HRS § 386-87. At this stage of the proceeding the Special Compensation Fund (established pursuant to HRS § 386-151) was made a party.[1]

At the *de novo* hearing on the merits before the Board, claimant testified that he had suffered no back pain or apparent back disability prior to the 1966 accident but that since the 1966 accident he has felt pain in his back continuously in

---

[1] HRS § 386-33 states:

"§ 386-33 *Subsequent injuries which would increase disability*. If an employee receives an injury which of itself would cause a permanent partial disability but which, combined with a previous disability, results in a greater permanent partial disability or in permanent total disability, the employer shall pay compensation only for such disability as would have been caused by the injury without the previous disability. The employee shall be entitled to full compensation for his actual permanent partial or total disability, and, after receipt of the compensation payable by the employer, weekly payments of the balance of the compensation to which the employee is entitled shall be made out of the special compensation fund by orders of the director of labor and industrial relations."

varying degrees depending upon his bodily position.[2] He also testified that he was not involved in any other accident after the 1966 accident. He further testified that while he was undergoing treatment for the 1966 accident he continued to work for employer until approximately one or two months after the accident when he was laid off for the reason that he was unable to perform his work duties satisfactorily. Subsequent to his release by Dr. Leong, he worked periodically for other employers as a laborer but was unable to retain employment as a result of inability to work because of the pain in his back.

The only other witness to testify before the Board was Dr. Dodge, who formerly acted as an orthopedic consultant but who is currently serving as claimant's physician. He testified that he had treated claimant since 1971 and that at present he evaluated claimant as permanently and partially disabled up to 28% of the whole man. He further testified that the 1966 accident aggravated the pre-existing osteo-arthritic condition and that "there is no question" that at least some portion of the present back condition is causally related to the aggravation caused by the 1966 accident.

A medical report by Dr. Sakoda dated March 5, 1973, was stipulated into evidence along with other medical records. It was Dr. Sakoda's expert opinion that a causal connection evidently existed between the 1966 injury and claimant's present back injury. Dr. Sakoda's letter stated "that the present findings are the result of the apparent injury to his back. . . . It could very well be related to his apparent injury . . . ."

The Board in its decision and order concluded that:

"1. Claimant suffered no permanent partial disability as a result of his accident of July 7, 1966, his back condition having returned by July of 1967 to the condition which prevailed prior to his work accident.

---

[2] Where a claimant's arthritic condition is inactive or dormant and then is lighted up by a work-connected injury and continues in that state, then his condition is due to the work-connected injury. *Brittain v. Department of Labor and Industries,* 178 Wash. 499, 35 P.2d 49 (1934); *McGuire v. Department of Labor and Industries,* 179 Wash. 645, 38 P.2d 266 (1934).

2. The present condition of Claimant's back is unrelated to his work injury of July 7, 1966.

3. Impairment of Claimant's knees which was first reported in April of 1970 is not related to his work injury."

I.

In support of the decision of the Board, the employer's threshold position on appeal is that the claimant did not initially present a showing of substantial evidence in support of his application, allegedly required prior to obtaining a review by HRS § 386-89(c). We do not believe that a showing of substantial evidence is necessary as a prerequisite to a review by the Director or the Board of an application under subparagraph (c) of HRS § 386-89. That subparagraph requires that the applicant for a review must show by substantial evidence "a change in or . . . a mistake in a determination of fact related to the physical condition of the" claimant only to justify favorable consideration of the application. We agree that claimant made no such showing in regard to his claim for benefits and compensation for the condition of his knees. All evidence points to the inevitable conclusion that this injury did not manifest itself to the claimant until long after his work accident of July 7, 1966, and that it is not related to this accident.

II.

The employer next asserts that there was no substantial evidence upon which the Board could favorably consider claimant's application with respect to his back injury because the Board found claimant's evidence not credible.

HRS § 386-88 (Supp. 1974) confines our review of decisions by the Labor and Industrial Relations Appeals Board to matters of law. Since the Board is an agency within the definition of the Hawaii Administrative Procedure Act,[3]

---

[3] HRS § 91-1, *et seq*. The holding in *Ras v. Hasegawa*, 53 Haw. 640, 500 P.2d 746 (1972), in which the phrase "HRS § 386-73 (1970 Supp.) and HRS § 386-88 (1970 Supp.) supersede HRS § 91-14" appears, was directed only at § 91-14(b) which provides that "proceedings for review shall be instituted in the circuit court . . . except where a statute provides for a direct appeal to the supreme court . . . ."

*Cazimero v. Kohala Sugar Co.*, 54 Haw. 479, 510 P.2d 89 (1973), the applicable standards of review are supplied by HRS § 91-14(g)(Supp. 1974) which states:

"(g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Among the sources which the legislature considered when it drafted the Hawaii Administrative Procedure Act were the federal Administrative Procedure Act, the first tentative draft of the revision of the Model State Administrative Procedure Act and the Hawaii Rules of Civil Procedure.[4] The specific language of original HRS § 91-14(g) was taken from the corresponding section of the first tentative draft of the revision of the Model State Administrative Procedure Act.[5] The note accompanying that section of the Revised Model State Administrative Procedure Act as published in 1961 states:[6]

---

[4] Standing Committee Report No. 8 of the Committee on Judiciary of the House of Representatives, 1961 House Journal, Regular Session, 653, 654. *See also* Standing Committee Report No. 713 of the Committee on Judiciary of the Senate, 1961 Senate Journal, Regular Session, 925.

[5] Standing Committee Report No. 8, *Id.* at 660.

[6] Revised Model State Administrative Procedure Act (1961 Act) § 15, Commissioners' Note, 9C U.L.A. 159 (1967 Supp.).

"Two important changes are made in subsection (g) from the corresponding provisions in the original Model Act.

First, the 'substantial evidence rule' has been replaced by the 'clearly erroneous rule,' thus following the recommendation of the Hoover Commission Task Force and the American Bar Association Special Committee on Legal Services and Procedure. This change places court review of administrative decisions on fact questions under the same principle as that applied under the Federal Rules of Civil Procedure in connection with review of trial court decision. See Rule 52(a). Also see United States v. U.S. Gypsum Company (1948), 333 U.S. 364, 68 Sup.Ct. 525, and Barron and Holtzoff, Federal Practice and Procedure, Par. 1133."

When reviewing the findings of a trial court under the "clearly erroneous" standard in Rule 52(a), H.R.C.P.,[7] the test is whether the appellate court is left with a firm and definite conviction that a mistake has been made. *Honda v. Higa,* 52 Haw. 311, 474 P.2d 708 (1970); *Frey v. Goebert,* 52 Haw. 308, 474 P.2d 537 (1970). The opinion in *Universal Camera Corp. v. NLRB,* 340 U.S. 474 (1951), where the United States Supreme Court explained the "substantial evidence" rule found in the federal Administrative Procedure Act,[8] is equally appropriate in explaining the "clearly erroneous" rule. There the Court stated "[t]here are no talismanic words that can avoid the process of judgment," 340 U.S. at 489, and concluded:

"The Board's findings are entitled to respect; but they must nonetheless be set aside when the record before a Court of Appeals clearly precludes the Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence or both." 340 U.S. at 490.

---

[7] Rule 52(a), H.R.C.P. (which is based on Rule 52(a) F.R.C.P.), states in *pari materia* that "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witness."

[8] 5 U.S.C. § 706.

The issue of credibility is one within the primary responsibility of the Board as the fact finder whose determination will not be disturbed lightly. But where the record reveals no conflict in the evidence or impeachment of any witness, the court will not sustain a finding as to credibility which it is firmly convinced is mistaken. *Corp v. Joplin Cement Company*, 337 S.W.2d 252 (Mo. 1960); *Sanderson v. Producers Commission Ass'n.*, 229 S.W.2d 563 (Mo. 1950). *C.f. Dickinson v. United States*, 346 U.S. 389 (1953). In our review of the record, we find that the Board's rejection of the claimant's evidence relative to his back injury on the basis of credibility was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record. HRS § 91-14(g)(5).

The record before us reveals that the employer chose not to present any testimony contradicting that introduced by claimant.[9] The Board's first two conclusions that the claimant did not suffer any permanent partial disability from his accident of July 7, 1966, and that his present back condition is unrelated to the work injury of July 7, 1966, are each based upon the finding that within the year following the accident claimant's back condition had returned to a state which prevailed prior to his work accident. Such a finding of fact is, however, not supported by the record. A careful review of the record shows that the only evidence which supports such a finding is a skeletal form WC-2 Physician's Final Report, dated February 20, 1968 and signed by Dr. Leong. Although the employer relied on the fact that claimant had been cured, it did not call Dr. Leong to explain the report.[10] The report being in the form of the fill-in-the-blank variety contains very

[9] The only contradictory medical opinion as such which comes to our attention is a letter report of Dr. Luke which was not stipulated into evidence. The stipulation of the parties in regard to the admissibility of evidence of medical reports concerned only such reports as were "presently in the file" on the date of the hearing before the Board which was April 19, 1973. Dr. Luke's report which was prepared on May 14, 1973, did not come into the file until May 18, 1973.

[10] We are not diluting the value of the report in this case. See *Royal State Nat'l Ins. v. Labor Bd.*, 53 Haw. 32, 36 n. 1, 487 P.2d 278, 281 n. 1 (1971). By noting that Dr. Leong did not testify, we are only illustrating an alternate source of evidence which could establish the alleged cure of claimant either independently of the report or by adding the information missing from the incomplete report.

little information. It is also contradictory on its face in that it shows that claimant was discharged as cured, but without elaboration, states that claimant was "able to flex only 60%." It further states that the only cause of claimant's condition was the 1966 accident although the parties agree that the claimant then had a pre-existing osteo-arthritic condition in his lower back, which prior to the accident was asymptomatic and unknown to the defendant. In addition, although the form contains the phrase "Describe any permanent defect or disfigurement" followed by a square with the word "none", the square is not marked nor is there any explanation why it is not marked.

We hold that form WC-2 report contains insufficient information, is unsupported by other evidence and is therefore an unreliable and isolated basis for finding that claimant did not sustain any disability. *Wheatley v. Adler,* 407 F.2d 307 (D.C. Cir. 1968); *Seitzinger v. Fort Pitt Brewing Co.,* 294 Pa. 253, 144 A. 79 (1928).

III.

Moreover, our holding that the Board's conclusion that claimant's present back condition is not related to his 1966 work injury is clearly erroneous is heightened when we accord proper emphasis to the statutory presumption of HRS § 386-85(1) which we believe to be applicable. Although claimant's condition had not previously been determined, based upon the record, there is no question that claimant is now partially disabled. Claimant's evidence was that this condition is due to the accident of July 1966, while the employer offered only speculative argument to the contrary. In addition, HRS § 386-85(1) provides that it is "presumed, in the absence of substantial evidence to the contrary . . . [t]hat the claim is for a covered work injury;". We have on numerous occasions construed the force and effect of the language of this statute.

The leading case interpreting HRS § 386-85(1) is *Akamine v. Haw'n Packing & Crating Co*., 53 Haw. 406, 495 P.2d 1164 (1972). In that case we stated:

"The viability of the subject statutory presumption has been firmly established and its meaning clearly articulated by this court. Highly instructive also are the interpretations given by the federal courts to the presumption in the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 920(a)(1970), whose language is almost identical to that in the presumption in the Hawaii statute.

The presumption is not a mere procedural device that disappears upon the introduction of contrary evidence. *Corden v. Paschoal's Limited,* 52 Haw. 242, 244, 473 P.2d 561 (1970). It imposes upon the employer the burden of going forward with the evidence and the burden of persuasion. It may be rebutted only by substantial evidence that it is unrelated to the employment." 53 Haw. at 408, 495 P.2d at 1166.

*See also S & W Crane Serv. v. Berard,* 53 Haw. 161, 489 P.2d 419 (1971); *Royal State Nat'l Ins. v. Labor Bd.,* 53 Haw. 32, 487 P.2d 278 (1971); *Acous. Insul'n & Drywall v. Labor Bd.,* 51 Haw. 312, 459 P.2d 541 (1969), *rehearing denied,* 51 Haw. 632, 466 P.2d 439 (1970).

We further stated in the second opinion which denied the petition for rehearing in *Acous. Insul'n & Drywall v. Labor Bd.,* 51 Haw. 632 at 635, 466 P.2d 439 at 441 (1970), quoting from *Wheatley v. Adler,* 407 F.2d 307 (D.C. Cir. 1968), that:

" 'There is an express statutory presumption that the "claim comes within the provisions of this chapter," a presumption of compensability grounded in the "humanitarian nature" of the Act. Moreover, and this is significant in the present case, the fact that an injury or death occurs "in the course of employment strengthens the presumption that it arises out of the employment, *with doubts resolved in the claimant's favor*' ' ". (Emphasis added.)

We hold that a proceeding brought by a claimant under HRS § 386-89(c) is plainly a "proceeding for the enforcement

of a claim for compensation under [our workmen's compensation] chapter." HRS § 386-85. Where, as here, the primary issue is whether or not an injury is related to a work accident, a claimant is entitled to the same presumption on review of a case once closed that his claim is for a covered injury as that in an original hearing. We find nothing in *Acous. Insul'n & Drywall v. Labor Bd., supra,* and its progeny to indicate otherwise.

While the concurring opinion does point out that issues which have been litigated in workmen's compensation cases are generally foreclosed from relitigation by the sound principles of res judicata, the citations from Professor Larson's treatise, WORKMEN'S COMPENSATION LAW, which appear therein do not shed light on the separate issue of whether, when a deterioration of the physical condition of claimant has been shown, such change of condition, or true condition in the case of mistake, is due to the work accident. In view of what we have said in this part in regard to the force of our statutory presumptions, the comments referred to above from section 81.32, vol. 3, of the treatise, as well as sections 81.33 and 81.52, from the same source, relating to quality and kind of testimony that must be presented in a reopening proceeding and statutes which extend the power of reopening based upon mistake, would be irrelevant, since these remarks do not expressly or impliedly concern the applicability of a statute similar or identical to HRS § 386-85. Likewise, the New York cases cited in the concurring opinion do not stand for the proposition that the statutory presumption would not apply in a reopening proceeding.

The conclusions of the Board, other than that relating to claimant's knees, having prejudiced his substantial rights, must be set aside. *Gavan v. H. D. Tousley Company,* 395 S.W.2d 266 (Mo. 1965).

Reversed in part and remanded for further proceedings not inconsistent with this opinion.

*Laurence D. Scott* for claimant-appellant.

*Richard E. Stifel (John A. Roney* on the brief, *Goodsill Anderson & Quinn* of counsel) for H & K Contractors,

employer-appellee, and Financial Security Life Insurance Company, insurance carrier-appellee.

*Frank K. L. Yap, Jr.*, Deputy Attorney General *(Roy Miyamoto*, Deputy Attorney General, on the brief), for Special Compensation Fund, Department of Labor and Industrial Relations.

CONCURRING AND DISSENTING OPINION OF KOBAYASHI, J.

I concur with the opinion of the majority in all respects, save and except part III. It is my conviction that the statutory presumption in favor of the injured employee has no relevancy and cannot aid the applicant in a proceeding under HRS § 386-89(c).

In my opinion, the majority errs in its statement, to-wit: "Moreover, our holding . . . is heightened when we accord proper emphasis to the statutory presumption of HRS § 386-85(1) which we believe to be applicable. . . . In addition, HRS § 386-85(1) provides that it is 'presumed, in the absence of substantial evidence to the contrary . . . [t]hat the claim is for a covered work injury;' . . . ."

The net result of the above statement is the total emasculation of the requirements of HRS § 386-89(c) that in a reopening proceeding, the claimant must prove by a showing of substantial evidence that a change in or a mistake in a determination of fact related to the physical condition of the claimant has occurred. The burden of proof is on the claimant under § 386-89(c). The opposite is true under the statutory presumption. Yet, the substantive result of the statement of the majority enables the claimant, even in the absence of a showing of substantial evidence, to prevail because the majority of the court accords the claimant the presumption of HRS § 386-85(1) in a proceeding under § 386-89(c).

The opinion of the majority contains a substantive contradiction that is irreconcilable, to-wit: in part I the majority states "the applicant for a review [under HRS § 386-89(c)] must show by substantial evidence 'a change in or . . . a mistake in a determination of fact related to the physical condition of the' claimant . . . to justify favorable consideration of the application"; while in part III the majority states

that the statutory presumption of HRS § 386-85(1) is applicable in a proceeding under § 386-89(c). At the least, the opinion is confusing. If the applicant under § 386-89(c) fails to adduce substantial evidence in support of his application, would the requirement of substantial evidence of § 386-89(c) prevail or would the statutory presumption in favor of the applicant prevail?

I believe that the opinion of the majority goes counter to the plain and clear meaning of the unambiguous provisions of the pertinent parts of § 386-89(c).

For support of its opinion, the majority relies mainly upon *Akamine v. Hawaiian Packing & Crating Co.*, 53 Haw. 406, 495 P.2d 1164 (1972). In my opinion *Akamine* is inapposite for it did not involve a reopening proceeding under HRS § 386-89(c). The majority fails to cite any authority supporting its proposition that the statutory presumption aids the applicant in a proceeding under § 386-89(c).

On the other hand, my contention that the statutory presumption does not aid the claimant in a proceeding under HRS § 386-89(c) is not only supported by the clear, plain and unambiguous terms of § 386-89(c), but also by Professor Larson in his treatise, "Workmen's Compensation Law".

In § 81.32, vol. 3, Larson states:

> In a reopening proceeding, the issue before the board is sharply restricted to the question of extent of improvement or worsening of the injury on which the original award was based. . . . In short, no matter who brings the reopening proceeding, neither party can raise original issues such as work connection, employee or employer status, occurrence of a compensable accident, and degree of disability at the time of the first award.

In § 81.33, vol. 3, Professor Larson states:

> Since the issue is the degree of change in claimant's condition, it is important that expert testimony and commission findings on degree of disability be comparative, not absolute; . . . .
>
> . . . .
>
> The requirement that the evidence of change be com-

parative is satisfied not only by testimony cast in terms of relatively higher or lower percentages of disability or degrees of seriousness of the condition, but also by a showing of the appearance of a factor that is new in kind rather than in degree. . . .

The burden of proof of showing a change in condition by the preponderance of the evidence is on the party, whether claimant or employer, asserting the change. In meeting this burden, one of the strongest kinds of evidence is of course the testimony of a doctor who has examined claimant and evaluated his disability at both relevant times in the comparison. . . . But if his [doctor's] only knowledge of claimant's subsequent condition is based in subjective symptoms or on a history furnished him by the claimant, this is not enough.

Professor Larson continues in § 81.52, vol. 3:

A number of statutes have extended the power of reopening beyond change of condition by express statute. Such statutes sometimes specify additional grounds, such as mistake, or particular mistakes, or fraud and error, or newly discovered evidence, or other listed justifications. The concept of "mistake" requires careful interpretation. It is clear that an allegation of mistake should not be allowed to become a back-door route to retrying a case because one party thinks he can make a better showing on the second attempt. . . . The kind of mistake that will warrant reopening is ordinarily a mistake on the part of the fact-finder . . . .

The above quotes of Professor Larson clearly show that the statutory presumption does not aid the applicant in a reopening proceeding. *See also Phillip v. C and M Auto Spring Co.,* 9 App. Div. 2d 571, 189 N.Y.S.2d 243 (1959); *Andrews v. Einsfeld,* 280 App. Div. 1028, 116 N.Y.S.2d 814 (1952). [New York has a statutory presumption provision similar to HRS § 386-85: New York Workmen's Compensation Law § 21 (McKinney 1965). See also § 22 thereof for modification of awards, decisions or orders.]