In the Matter of the Application of HAWAII ELECTRIC LIGHT COMPANY, INC., for Approval of Rate Increases and Revised Rate Schedules

NO. 9617

(DOCKET NO. 4393)

OCTOBER 31, 1984

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

*Per Curiam.* Hawaii Electric Light Company (HELCO) appeals the decision and order of the Public Utilities Commission (PUC) on HELCO's application for approval of rate increases and revised rate schedules. HELCO claims that the PUC erred in that: HELCO should have been given notice that the undrawn proceeds of the sale of Special Purpose Revenue Bonds (SPR bonds) would be at issue; HELCO was denied due process when the PUC refused to allow HELCO's witness to testify during the reconsideration hearing; and the PUC wrongfully included the undrawn proceeds of the sale of the SPR bonds in calculating cost of capital and income taxes. We affirm.

I.

On December 29, 1981, HELCO filed with the PUC an application for approval of rate increases and of revised rate schedules. The requisite public and contested hearings were held on the application. During the contested hearings, written testimony and exhibits were submitted, witnesses testified and were cross-examined, and extensive briefs were filed by both HELCO and the Consumer Advocate (CA), the only other participant.

The Legislature, in 1981, authorized the sale of SPR bonds to finance specified and approved energy projects.[1] SPR bonds are exempt from taxation which means that financing can be obtained at lower interest rates through SPR bonds than through the usual financing methods. The lower financing costs ultimately should

---

[1] Act 15, 1981 Hawaii Sp. Sess. Laws 668, 669.

result in lower rates for HELCO's customers.

In 1981, HELCO was concerned that Congress would, in the near future, eliminate the favorable tax features of the SPR bonds. This concern led HELCO to obtain approval of the sale of the SPR bonds which generated net proceeds of $7.2 million. At the time of the sale of the bonds, HELCO had plans to use only a portion of the $7.2 million.

In 1982 (the test year used in this rate-increase proceeding), HELCO anticipated to draw and use only $2,351,000 of the $7.2 million. The remaining undrawn proceeds ($4,849,000) were held by a Construction Fund Trustee and HELCO could only draw these moneys for specified projects approved by the PUC. The Construction Fund Trustee invested these undrawn proceeds and the record indicates that the income earned on the investments has adequately covered the interest expense of the bonds.

During the rate-increase proceedings, both HELCO and the CA included only the drawn proceeds of the SPR bonds in the capital structure and in calculating operating revenues and expenses. The PUC, however, in Decision and Order No. 7553, included the entire $7.2 million — the drawn and undrawn proceeds — in calculating the cost of capital and income tax expense. The PUC did not, however, include as income to HELCO the income received on the investment of the undrawn proceeds even though the interest expense on $7.2 million was included in the PUC's calculations. The net effect of the PUC's action was a lowering of HELCO's calculated revenue requirement for obtaining a fair rate of return.

HELCO protested the PUC's action of including the undrawn proceeds in calculating the cost of capital and income tax, and argued that the undrawn proceeds was never raised as a disputed issue throughout the proceedings. HELCO requested a reconsideration and a rehearing. The PUC heard oral argument by HELCO on the issue of the treatment of the undrawn proceeds at the reconsideration hearing, but declined to receive any further oral or written testimony. In addition to oral argument, HELCO filed a Memorandum re Undrawn Proceeds of Special Purpose Revenue Bonds. The PUC found "no new grounds, points or authorities presented not already considered" and refused to modify its decision and order.

## II.

Review of an administrative decision and order in contested case is governed by HRS § 91-14. HRS § 91-14(g)(3) expressly provides that an administrative decision and order is subject to reversal or modification if made upon unlawful procedure. *In re Application of Hawaiian Telephone Co.*, 67 Haw. 370, 379, 689 P.2d 741, 747 (1984).

In a contested case, the Hawaii Administrative Procedures Act, Chapter 91, HRS, requires that the parties have notice of the issues and be provided an opportunity to present evidence and argument on all issues. *See* HRS § 91-9. HELCO claims that notice should have been given that the undrawn proceeds was an issue to be considered by the PUC.

The statement of issues in Prehearing Order No. 7051 (Record on Appeal (R.) 108) is cast in general terms, *e.g.*, "Are the proposed tariffs, rates and rate structure reasonable?" (R.111). The nature and complexity of rate-making proceedings make it impractical to adopt a particularistic standard of issue identification. Each item and calculation used in arriving at the proposed rate schedule is an inherent and integral part of the proceeding. The utility should expect that all items relative to the stated general issues are subject to PUC review. *See City of Evansville v. Southern Indiana Gas & Electric Co.*, 167 Ind. App. 472, 496-497, 339 N.E.2d 562, 577-578 (1975). Particularized notice may be required where further evidence is needed to decide the issue, *see, e.g., Application of Plainfield-Union Water Co.*, 11 N.J. 382, 94 A.2d 673 (1953); *Ohio Bell Telephone Co. v. Public Utilities Commission of Ohio*, 301 U.S. 292 (1937); *Fleming v. Illinois Commerce Commission*, 388 Ill. 138, 57 N.E.2d 384 (1944), or where the regulatory agency is contemplating a change in long-standing policy which would adversely affect the utility. *Mars Hill & Blaine Water Co. v. Public Utilities Commission*, 397 A.2d 570, 577 (Me. 1979); *Utility Regulatory Commission v. Kentucky Water Service Co.*, 642 S.W.2d 591 (Ky. App. 1982).

The fact that both HELCO and the CA, the only parties in the contested case, did not include the undrawn proceeds in their calculations is of no legal consequence. The PUC is not bound to accept the view of one of the parties in the case. *Arkansas Public*

*Service Commission v. Continental Telephone,* 262 Ark. 821, 561 S.W.2d 645 (Ark. 1978). "The methodology used by the [PUC] in its rate-making determinations need not be suggested by any witness in the record. The methodology itself lies within the [PUC's] expertise and discretion . . . ." *Mars Hill & Blaine Water Co. v. Public Utilities Commission,* 397 A.2d at 576. The PUC's exercise of judgment in declining to accept the methodology used by any of the parties in the case does not mandate particularized notice of its plan to do so.

Of course, due process and HRS § 91-9 require that parties be given a meaningful opportunity to be heard. This implies the right to submit evidence and argument on the issues. *Utility Regulatory Commission v. Kentucky Water Service Co.,* 642 S.W.2d at 593; *Salvino v. United States,* 119 F. Supp. 277 (W.D. Wash., N.D., 1954) (quoting *Morgan v. United States,* 304 U.S. 1, 18 (1938)). Here, HELCO was given the opportunity to present evidence and argument on the issue of the undrawn proceeds. HELCO provided the PUC, during the hearings, with all the evidence necessary for the PUC to consider in rendering its decision. In addition, the PUC received oral argument and memorandum during the reconsideration hearing.

The parties must be allowed the opportunity to present evidence in a contested case. *See* HRS § 91-9. HRS § 91-10 grants to each party the right to cross-examine and to submit rebuttal evidence. HELCO asserts the denial of these rights by the PUC during the original hearings because the parties were unaware that the undrawn proceeds was an issue to be considered by the PUC. Further, at the reconsideration hearing, the PUC refused the proffered testimony of HELCO Vice President and Treasurer Andrew Ing.

The right to present evidence under HRS Chapter 91 is limited by considerations of relevancy, materiality, and repetition. *Cazimero v. Kohala Sugar Co.,* 54 Haw. 479, 510 P.2d 89 (1973). The proposed testimony of Mr. Ing contains no new evidence pertinent to the issue regarding the undrawn proceeds. In fact, a careful review of Mr. Ing's proposed testimony reveals that the testimony is only argument — the same arguments HELCO covered both orally and by memorandum at the reconsideration hearing. Mr. Ing himself stated that the purpose of his proposed testimony was to "explain [his] understanding of rate-making theory" relative to the SPR

bonds. Facts offered by Mr. Ing related to the drawn amounts and the holding and investment of the undrawn amounts by the Construction Fund Trustee. These same facts were already before the PUC by previous testimony of a HELCO witness. Mr. Ing's proposed testimony would only have been cumulative. Further, much of Mr. Ing's proposed testimony dealt with HELCO's accounting treatment of the SPR bonds. The accounting methods of HELCO cannot dictate rate-making policies of the PUC, *Mechanic Falls Water Co. v. Public Utilities Commission*, 381 A.2d 1080, 1102 (Me. 1977); *Alabama-Tennessee Natural Gas Co. v. Federal Power Commission*, 359 F.2d 318 (5th Cir. 1966), thus HELCO's accounting methods are immaterial to the PUC's decision and order.

The facts relevant and material to the PUC's determination of the treatment of the undrawn proceeds were not in dispute. No additional facts were necessary in order for the PUC to render its decision and order. Whether the undrawn proceeds should be included in the computations was a question of judgment and policy and was not a question dependent on any factual issue. The PUC did not err in denying a rehearing on this matter and in refusing Mr. Ing's proposed testimony.

We hold that the PUC did not violate statutory nor constitutional procedural requirements.

### III.

HELCO also contends that the PUC committed substantive error by the inclusion of the undrawn proceeds in calculating cost of capital and income taxes. HELCO argues that if such inclusion was not error, then the PUC erred in the income tax calculation when it failed to make an offsetting adjustment for interest income from the undrawn proceeds.

In reviewing substantive issues in rate-making cases, this court has a very limited role. We are not empowered to examine the case *de novo*, but are limited to the question whether the rates authorized by the PUC are "just and reasonable." *In re Application of Hawaiian Telephone Co.*, 67 Haw. at 379, 689 P.2d at 747; *In re Hawaii Electric Light Co.*, 60 Haw. 625, 594 P.2d 612 (1979).

Under the statutory standard of "just and reasonable" it is the

result reached and not the method employed which is controlling . . . . It is not theory but the impact of the rate order which counts. If the total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry . . . is at an end. *Id.* at 637, 594 P.2d at 621 (quoting *Federal Power Commission v. Hope Natural Gas Co.,* 320 U.S. 591, 602 (1944)).

The methodology employed by the PUC in its rate-making determination lies within its expertise and discretion. *Mars Hill and Blaine Water Co. v. Public Utilities Commission,* 397 A.2d at 576. The PUC is free, within the ambit of its statutory authority, to make pragmatic adjustments called for by particular circumstances. *In re Application of Hawaiian Telephone Co.,* 67 Haw. at 383, 689 P.2d at 750. In view of HRS § 39A-208(a)[2] which mandates the PUC to provide consumers the maximum benefits in the treatment of SPR bonds in rate-setting proceedings, the PUC may have taken into consideration the special facts of this case in selecting the method to treat the drawn and undrawn proceeds of the sale of the SPR bonds. We hold that the PUC did not step outside the bounds of its statutory authority, nor do we find an abuse of discretion by the PUC.

HELCO has failed to show that the inclusion of the undrawn proceeds of the sale of the SPR bonds in the PUC's calculations resulted in an unjust or unreasonable rate increase.

Affirmed.

*David Fairbanks (Thomas W. Williams, Jr.* and *Marshall M. Goodsill* with him on the briefs; *Goodsill Anderson Quinn and Stifel,* of counsel) for Appellant Hawaii Electric Light Company, Inc.

*Ronald Shigekane,* Deputy Attorney General, for Consumer Advocate.

On the brief: *Harry Kim,* for Public Utilities.

---

[2] HRS § 39A-208(a) reads as follows:

(a) In setting of rates to be paid by the consumers of utility services, the public utilities commission shall provide such consumers the maximum benefits derived by the utility from the use of such bonds.