**Electronically Filed
Intermediate Court of Appeals
CAAP-10-0000096
13-FEB-2012
09:57 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

IN THE MATTER OF THE APPLICATION
OF MOLOKAI PUBLIC UTILITIES, INC.,
For Review and Approval of Rate Increases,
Revised Rate Schedules, and Revised Rules

NO. CAAP-10-0000096

APPEAL FROM THE PUBLIC UTILITIES COMMISSION
(DOCKET NO. 2009-0048)

FEBRUARY 13, 2012

FOLEY, PRESIDING J., FUJISE AND LEONARD, JJ.

OPINION OF THE COURT BY FOLEY, J.

Intervenor-Appellant County of Maui (County) appeals
from the September 23, 2010 Decision and Order (Decision) of the
Public Utilities Commission (PUC) of the State of Hawai'i
(State). In the Decision, PUC granted approval to Appellee
Molokai Public Utilities, Inc. (MPU) for a general rate increase
of approximately 126.52% over previous rates. On appeal, County

contends PUC erred when PUC found that MPU's proposed rate increase was just and reasonable

(1)    where the rate increase was based in part on the illegal use of Well 17 without a water use permit;

(2)    where the rate increase was based in part on the use of the Molokaʻi Irrigation System (MIS) without an Environmental Assessment; and

(3)    when PUC relied on a settlement agreement where (a) the representative appointed by the Division of Consumer Advocacy (Consumer Advocate) failed to protect the consumer and (b) MPU failed to satisfy its burden of proof to justify the rate increase.

## I.

MPU is a public water utility that provides potable water service in the Kaluakoi area on the island of Molokaʻi. Specifically, MPU provides potable water to the Kaluakoi Resort, Ke Nani Kai and Paniolo Hale Condominiums, Kaluakoi Villas, Papohaku Ranchlands, Moana Makini subdivisions, and Molokaʻi county parks (collectively, Customers).  MPU is a wholly-owned subsidiary of Molokaʻi Properties Limited.  PUC originally authorized MPU to operate as a utility and approved MPU's initial water rates in October 1981.  PUC approved a rate increase in July 2003 and a temporary increase in August 2008.

The water supplied by MPU is pumped from Well 17 and delivered through the MIS.  MPU has no alternative means of transporting water from Well 17 to its Customers other than the MIS.  The MIS is administered by the State Department of Agriculture, which has an agreement with Kaluakoi Water, LLC, a wholly-owned subsidiary of Molokaʻi Properties Limited.  Pursuant to Hawaii Revised Statutes (HRS) § 174C-48 (1993), a water use permit was required from the State Commission on Water Resource Management to pump water from Well 17.  At the time the Decision was rendered, MPU did not have the required water use permit from that commission.  In September 2007, the Department of

2

Agriculture determined that any agreement for the continued use of the MIS by Kaluakoi Water, LLC, would require the preparation of an Environmental Assessment pursuant to HRS Chapter 343.

MPU filed its Amended Application seeking PUC's approval of a general rate increase on June 29, 2009. In its application, MPU sought an increase in its revenues to $886,259, approximately 201.5 percent over its previous total revenue requirement of $439,838.

On October 16, 2009, PUC granted intervention to County. On April 27, 2010, PUC held a prehearing conference in preparation for the evidentiary hearing scheduled to commence on May 11, 2010. On May 6, 2010, MPU and the Consumer Advocate informed PUC that the two parties had reached a full settlement, stipulating to a total revenue requirement of $982,336 for MPU. According to the settlement agreement, MPU would continue to use Well 17 and the MIS.

The evidentiary hearing commenced on May 11, 2010 and was completed on May 13, 2010. On May 28, 2010, PUC issued its Interim Decision and Order, which approved on an interim basis a 125 percent revenue increase of $542,724, resulting in a total yearly revenue of $976,375. In the September 23, 2010 Decision, PUC allowed a revenue increase of $548,682, or 126.52 percent over previous revenues, for a total of $982,333 in revenues. PUC further ordered that, prior to its next rate case proceeding, MPU was to complete a cost of service study (COSS),[1] a wage study, and a management audit or time and motion study on the proper allocation of costs among the Moloka'i Properties Limited utilities.

County timely appealed.

---

[1] A COSS illustrates the relationship between the different customer classifications of a utility and serves the purpose of determining whether there is an undue burden on any of the customer classifications. See In re Hawaii Elec. Light Co. (HELCO I), 60 Haw. 625, 641, 594 P.2d 612, 623 (1979).

## II.

Rate-making decisions by PUC are governed by HRS § 269-16 (2007 Repl.), which requires that all rates and charges be "just and reasonable."  "The 'unjust and unreasonable' language does not represent a separate standard of review, but rather represents the application of the abuse of discretion standard to the statutory scheme underlying the PUC's rate-making powers."  Paul's Elec. Serv., Inc. v. Befitel, 104 Hawai'i 412, 419, 91 P.3d 494, 501 (2004).  While PUC decisions "are not presumptively valid[,] . . . an agency's discretionary determinations are entitled to deference, and an appellant has a high burden to surmount that deference."  Id.

## III.

A.   **The lack of a water use permit for Well 17 and lack of an Environmental Assessment for the MIS does not render PUC's rate determination unjust and unreasonable.**

County contends that approving MPU's requested rate increase based on its illegal use of Well 17 and the MIS is not "just and reasonable."  PUC has a duty to ensure that rates charged by a public utility are "just and reasonable."  HRS § 269-16.  However, County's interpretation of the phrase "just and reasonable" is erroneous.

County essentially argues that charging customers for water without the proper permit or without preparing the required report is per se unjust and unreasonable.  County cites to NAACP v. Fed. Power Comm'n, 425 U.S. 662, 96 S. Ct. 1806 (1976), for the proposition that when establishing just and reasonable rates a utility "clearly has the duty to prevent its regulatees from charging rates based upon illegal, duplicative, or unnecessary labor costs."  Id. at 668, 96 S. Ct. at 1810.  However, a further reading of the applicable case law makes clear that the dispositive factor is whether the costs were unnecessarily incurred because of an illegal activity.

4

In <u>Mountain States Telegraph & Telephone Co. v. FCC</u>, 939 F.2d 1035 (D.C. Cir. 1991), the United States Court of Appeals for the District of Columbia Circuit answered the question of whether an FCC policy of not allowing litigation expenses, settlements, and judgments against a utility to be factored into a utility's rate was valid. <u>Id.</u> at 1043. The court held that litigation expenses, settlements, and judgments associated with antitrust violations generally could not be factored into a utility's rate. <u>Id.</u> The court clarified, however, that the exception to this rule is that if the ratepayers are expected to benefit from the illegal conduct that results in litigation expenses, settlement or judgments, then those expenses can be factored into a utility's rate. <u>Id.</u>

It is the "aim of rate regulation to protect ratepayers from having to pay charges unnecessarily incurred, including those incurred as a result of the carrier's illegal activity." <u>Id.</u> at 1043. This rule clearly states that ratepayers must be protected from charges <u>unnecessarily incurred as a result of the illegal activity</u>. County has failed to demonstrate how any charges were unnecessarily incurred from MPU's use without a proper permit for Well 17 or MPU's use of the MIS without conducting an Environmental Assessment. If a utility's conduct is illegal, but the utility does not incur any unnecessary expenses as a result of its conduct, the conduct has no effect on whether the utility's rates are "just and reasonable."

This logic becomes clearer by drawing an analogy among <u>Mountain States</u>, <u>NAACP</u>, and the instant case. In <u>NAACP</u>, the Supreme Court found that costs (such as backpay awards) and litigation expenses stemming from employment discrimination could not be factored into a utility's rates. 425 U.S. at 668, 96 S. Ct. at 1810-11. In both <u>NAACP</u> and <u>Mountain States</u>, the respective courts looked to costs incurred <u>by</u> a utility's illegal activity, not simply costs incurred <u>during</u> a utility's illegal activity. The reasoning in these two cases may prevent MPU from

factoring any fees or litigation expenses stemming from its lack of proper permitting or lack of an Environmental Assessment, but it does not prevent MPU from charging <u>any</u> costs associated with Well 17 and the MIS. Because County cannot illustrate how MPU's purportedly illegal use of Well 17 and the MIS generated unnecessary costs that would not have been incurred if MPU had complied with the law, County has failed to demonstrate how the PUC's approval of a rate increase was not "just and reasonable."

**B.    PUC's approval of a rate increase does not violate the public trust doctrine because the rate increase does not affect the public trust resource.**

County contends PUC violated its duties and responsibilities under the public trust doctrine by approving MPU's requested rate increase in spite of the illegal use of Well 17 and the MIS without a water use permit or Environmental Assessment. While County correctly highlights the State's public trust duties, County fails to demonstrate how the rate increase affects the public trust.

"[T]he people of [Hawai'i] have elevated the public trust doctrine to the level of a constitutional mandate." <u>In re Water Use Permit Applications</u> (<u>Waiahole</u>), 94 Hawai'i 97, 131, 9 P.3d 409, 443 (2000). Article XI, section 1, of the Hawai'i Constitution, directed to the "State and its political subdivisions," mandates that "[a]ll public natural resources are held in trust by the State for the benefit of the people." Article XI, section 7, establishes the duty "to protect, control, and regulate the use of Hawaii's water resources for the benefit of its people." The Hawai'i Supreme Court held that these provisions "adopt the public trust doctrine as a fundamental principle of constitutional law in Hawai'i." <u>Waiahole</u>, 94 Hawai'i at 132, 9 P.3d at 444.

This doctrine undoubtedly establishes a public trust duty in the State and its agencies to protect surface and ground

6

water as a public trust resource. However, County fails to allege how any public trust resource has been affected. <u>Cf.</u> <u>In re Waiʻola O Molokaʻi</u>, 103 Hawaiʻi 401, 431, 83 P.3d 664, 694 (2004) (holding that the State has a duty to weigh the impact of a proposed use of water on the public trust). In the instant case, PUC dealt not with a proposed use, but rather a rate increase that did not increase the amount of water used or change how the water was extracted. Simply put, MPU's effect on the public trust water resources would be the same whether or not the rate increase was approved by PUC. Because PUC's rate approval had no effect on the public trust, PUC did not violate the public trust doctrine.

To be sure, this is not an approval of MPU's actions. The record makes clear MPU was required to obtain a water use permit and to prepare an Environmental Assessment. It is clear that under the law, MPU must take these steps. However, the forum to challenge a lack of water use permit or Environmental Assessment is not a rate approval application.

**C.    PUC did not err in relying on the settlement agreement between the Consumer Advocate and MPU.**

County contends PUC erred in relying on the settlement agreement between the Consumer Advocate and MPU because the Consumer Advocate breached its responsibilities to the consumers. The Consumer Advocate has a duty to "represent, protect, and advance the interests of all consumers." HRS § 269-51 (2007 Repl.). County argues that the Consumer Advocate breached its responsibilities by entering into the settlement agreement despite lacking information to support the rate increase.

PUC's reliance on the settlement agreement is subject to a degree of deference. As stated earlier, although PUC decisions "are not presumptively valid[,] . . . an agency's discretionary determinations are entitled to deference, and an appellant has a high burden to surmount that deference." <u>Paul's Elec. Serv.</u>, 104 Hawaiʻi at 419, 91 P.3d at 501.

County argues that the Consumer Advocate lacked adequate information regarding MPU's tax and book records for plant in service items. However, the record clearly indicates that any concerns regarding MPU's tax and book records for plant in service items are now moot because MPU agreed not to seek a rate of return, and, therefore, the tax and book records do not affect the determination of revenue requirements. As such, County fails to demonstrate how a lack of information regarding the tax and book records led to a rate increase that was not just and reasonable. Therefore, PUC did not err in approving MPU's requested rate increase.

### D.     PUC did not err by not requiring a COSS.

County's final contention is that PUC erred by accepting the pre-existing rate design[2] without requiring a COSS. PUC did not require MPU to conduct a COSS, but instead approved an across-the-board percentage increase in MPU's charges to its Customers. While the question of whether a COSS is required in a rate proceeding has not been specifically addressed in Hawai'i, reasoning by the Hawai'i Supreme Court clearly indicates that a COSS is not a requirement for a rate proceeding.

HRS § 269-16 does not require a COSS in a rate-making proceeding, but only provides that the rate must be "just and reasonable." The Hawai'i Supreme Court has been clear that "[t]he methodology employed by the PUC in its rate-making determination lies within its expertise and discretion." In re Hawaii Elec. Light Co., 67 Haw. 425, 431, 690 P.2d 274, 279 (1984).

> It is not theory but the impact of the rate order which counts. If the total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry is at an end. The fact that the method employed to reach that result may contain infirmities is not then important.

_____

2     "Rate design" is a term used to refer to the allocation or distribution of costs among the various classes of customers. See In re Inter-City Gas Corp., 389 N.W.2d 897, 901 (Minn. 1986).

<u>In re Hawaiian Tel. Co.</u>, 67 Haw. 370, 381, 689 P.2d 741, 749 (1984) (quoting <u>Fed. Power Comm'n v. Hope Natural Gas Co.</u>, 320 U.S. 591, 602, 64 S. Ct. 281, 288 (1944)). "[T]he reasonableness of utility rates is not determined by a fixed formula but is a fact question requiring the exercise of sound discretion by the Commission." <u>In re Hawaiian Tel. Co.</u>, 67 Haw. at 382, 689 P.2d at 749 (internal quotation marks, citation, and brackets in original omitted).

County does not demonstrate specifically how the effect of the rate increase was unjust and unreasonable, but instead essentially argues that without a COSS, the rate increase is per se unjust and unreasonable. Because it is not the method used in determining the rate, but rather the outcome that is dispositive, a COSS is not a necessary component of a rate increase proceeding. Without a further showing of an unjust and unreasonable result, a lack of a COSS alone is not enough to show that PUC erred in approving MPU's requested rate increase.[3]

## IV.

The Decision and Order filed on September 23, 2010 by the Public Utilities Commission of the State of Hawai'i is affirmed.

On the briefs:

Margery S. Bronster
Rex Y. Fujichaku
Leslie Patacsil Chinn
(Bronster Hoshibata)
and
Patrick K. Wong
Jane E. Lovell
Edward S. Kushi, Jr.
Deputies Corporation Counsel
for Appellant County of Maui.

---

[3] Several courts have specifically held that a COSS is not required in a rate proceeding when no statutory requirement is present. <u>See, e.g.</u> <u>Midwest Gas Users Ass'n v. State Corp. Comm'n</u>, 595 P.2d 735, 741-42 (Kan. Ct. App. 1979) (citing to <u>Cleveland Elec. Illuminating Co. v. Pub. Utilities Comm'n of Ohio</u>, 330 N.E.2d 1, 18 (1975)); <u>Apartment House Council of Metro. Washington, Inc. v. Pub. Serv. Comm'n</u>, 332 A.2d 53, 57 (D.C. Cir. 1975).

Michael H. Lau
Yvonne Y. Izu
for Appellee Molokai Public
Utilities, Inc.

Michael Azama
for Appellee State of Hawai‘i
Public Utilities Commission.

Jon S. Itomura
Lane H. Tsuchiyama
for Division of Consumer
Advocacy, Department of Commerce
and Consumer Affairs.