279 P.3d 69

In the Matter of the Application of WAIʻOLA O MOLOKAʻI, INC. For Review and Approval of Rate Increases, Revised Rate Schedules, and Revised Rules.

No. CAAP–11–0000148.

Intermediate Court of Appeals of Hawaiʻi.

June 14, 2012.

Margery S. Bronster, Rex Y. Fujichaku, Leslie Patacsil Chinn (Bronster Hoshibata) and Patrick K. Wong, Edward S. Kushi, Jr., Jane E. Lovell, Deputies Corporation Counsel, on the briefs, for Appellant County of Maui.

Michael H. Lau, Yvonne Y. Izu (Morihara Lau & Fong), on the briefs, for Appellee Wai'ola O Moloka'i, Inc.

Ji Sook Kim, on the briefs, for Appellee State of Hawai'i Public Utilities Commission.

Jon S. Itomura, Lane H. Tsuchiyama, on the briefs, for Division of Consumer Advocacy, Department of Commerce and Consumer Affairs.

FOLEY, Presiding J., FUJISE and LEONARD, JJ.

Opinion of the Court by FOLEY, J.

Intervenor–Appellant County of Maui (Maui County) appeals from the February 8, 2011 Decision and Order (Order) filed by the Public Utilities Commission (PUC). In its Order, PUC granted approval to Applicant–Appellee Wai'ola O Moloka'i (Wai'ola) for a rate increase of approximately 284.5% over previous rates.

On appeal, Maui County contends PUC erred by concluding Wai'ola's proposed rate increase was just and reasonable when

(1) the increase was based in part on unauthorized expenses;

(2) Waiʻola failed to satisfy its burden of proof;

(3) the representative appointed by the Division of Consumer Advocacy (Consumer Advocate) did not comply with his statutory mandate to represent, protect, and advance the interests of consumers;

(4) Waiʻola failed to satisfy its burden of proof in justifying its depreciation expense;

(5) Waiʻola failed to support an insurance expense of $16,000 by evidence in the record;

(6) the rate increase included a cost of sales expense that was not supported in the record;

(7) PUC failed to consider whether the ratepayers could afford to pay for the approved increase; and

(8) the record supporting $225,000 of regulatory expenses was insufficiently descriptive.

## I.

Waiʻola is a wholly-owned subsidiary of Molokaʻi Properties Limited (MPL), which provides water utility services to businesses, residences, churches, and Maui County parks located in Maunaloa, Kualapuʻu, Kipu, Manawainui, and the Molokaʻi Industrial Park areas of Molokaʻi. In addition to mountain water as a source of water, Waiʻola purchases water from Molokai Public Utilities (MPU), another subsidiary of MPL, and from the Department of Hawaiian Home Lands (DHHL).

In 1993, Waiʻola was granted a Certificate of Public Convenience and Necessity (CPCN) to provide water service to residential, commercial, and agricultural customers on the island of Molokaʻi. Through granting the CPCN, PUC authorized Waiʻola's rates and charges, effective January 13, 1993.

In March 2008, MPL announced plans to cease all business operations on Molokaʻi, including Waiʻola, within six months because it lacked sufficient revenues to pay its operating expenses. On June 5, 2008, the Consumer Advocate requested that PUC not allow MPL to terminate its utility operations.

PUC granted the Consumer Advocate's request, and on June 5, 2008, PUC ordered Waiʻola to continue providing services until PUC approved a transfer or surrender of Waiʻola's CPCN.

On June 13, 2008, PUC informed Maui County that PUC would be opening a docket to allow for a temporary increase in the water rates for Waiʻola in order to allow the utility to continue to provide water service to its customers. PUC then *sua sponte* opened Docket No. 2008–0115 to consider temporary rate relief for Waiʻola. After a public hearing on the matter, PUC approved a temporary increase in Waiʻola's monthly rate from $1.85 per thousand gallons to $5.15 per thousand gallons. The temporary increase was projected to result in additional annual revenues of $156,710. PUC extended the temporary increase until August 2009 or until a ruling was made on Waiʻola's application for a general rate increase.

On June 29, 2009, Waiʻola filed its Amended Application for Review and Approval of Rate Increases (amended application) seeking an increase in its total revenues to $473,431, or approximately 382.85% over its present revenue requirement. Waiʻola proposed to implement its increased revenue requirement (1) by increasing its water consumption charge from its temporary rate of $5.15 per thousand gallons (the last permanent rate being $1.85 per thousand gallons established in 1993) to a permanent rate of $8.9675 per thousand gallons and (2) by various monthly customer meter and private fire protection charges.

On September 3, 2009, PUC held a public hearing on the amended application. On October 16, 2009, PUC granted intervention to Maui County as a party, and on its own motion named MPL as a party. On May 19, 2010, the first day of the evidentiary hearing, the Consumer Advocate informed PUC that Waiʻola and the Consumer Advocate had reached a settlement agreement (settlement) on all rate-related issues. In the settlement, Waiʻola and the Consumer Advocate stipulated to a rate increase of $356,293 (or approximately 328.69%). Maui County was not a party to the settlement and objected.

On February 8, 2011, PUC issued its Order approving a rate increase of $360,238 or approximately 284.5%. Maui County timely appealed from the Order on March 10, 2011.

## II.

Rate-making decisions by PUC are governed by HRS § 269–16 (2007 Repl.), which requires that all rates and charges be "just and reasonable." "The 'unjust and unreasonable' language does not represent a separate standard of review, but rather represents the application of the abuse of discretion standard to the statutory scheme underlying the PUC's rate-making powers." *Paul's Elec. Serv., Inc. v. Befitel*, 104 Hawai'i 412, 419, 91 P.3d 494, 501 (2004). While PUC decisions "are not presumptively valid[,] ... an agency's discretionary determinations are entitled to deference, and an appellant has a high burden to surmount that deference[.]" *Id.*

## III.

**A. PUC did not err in allowing expenses related to servicing the Kualapu'u area to be factored into the proposed rate increases.**

Maui County contends PUC erred in failing to defer charges associated with the Kualapu'u service area. Maui County argues that because Wai'ola did not have a CPCN for Kualapu'u, Wai'ola was not authorized to charge customers for service in that area. PUC agreed it was undisputed that Wai'ola was not authorized, nor was seeking authorization, to provide water service to the Kualapu'u area. Nonetheless, PUC found that

to deny or delay [Wai'ola's] recovery of costs for provision of water service to customers in Kualapuu is inconsistent with the public interest given that: (1) there are customers that require and will continue to require water service in Kualapuu; and (2) there does not appear to be another provider of water service "willing" to provide service in the area. In addition, [PUC] agrees with the Consumer Advocate's assessment that denial of recovery of costs associated with Kualapuu would be "nonconducive to allowing [Wai'ola] to continue

to provide safe and efficient service to its customers[.]" [PUC] is mindful that this proceeding is rooted in Docket No. 2008–0115, where [PUC] provided [Wai'ola] and MPU with temporary rate relief to ensure continuance of utility operations. Adoption of [Maui County's] recommendation with respect to Kualapuu herein may jeopardize prior efforts to ensure that necessary water service is available without interruption to all of [Wai'ola's] customers.

Given the above, [PUC] will not "defer" [Wai'ola's] Kualapuu charges, as requested by [Maui County]. However, within sixty days of the date of this Decision and Order, [Wai'ola] shall file an application to expand its service territory to include the Kualapuu area.

Maui County argues that allowing costs associated with the Kualapu'u area is inconsistent with HRS § 269–7.5 (2007 Repl.), which states that no utility "shall commence its business without first having obtained from [PUC] a [CPCN]." Maui County also argues that PUC's decision to allow Wai'ola to charge for costs associated with the Kualapu'u area was inconsistent with HRS § 269–16 because such a rate is not "just and reasonable." HRS § 269–16(a) requires that "[a]ll rates, fares, charges, classifications, schedules, rules, and practices made, charged, or observed by any public utility or by two or more public utilities jointly shall be just and reasonable and shall be filed with the public utilities commission." Maui County cites to *NAACP v. Fed. Power Comm'n*, 425 U.S. 662, 96 S.Ct. 1806, 48 L.Ed.2d 284 (1976) and *Mountain States Tel. & Tel. Co. v. F.C.C.*, 939 F.2d 1035 (D.C.Cir.1991) for the proposition that when establishing "just and reasonable" rates, the PUC "clearly has the duty to prevent its regulatees from charging rates based upon illegal, duplicative, or unnecessary labor costs." *NAACP v. Fed. Power Comm'n*, 425 U.S. at 668, 96 S.Ct. 1806.

This court has already had occasion to apply *NAACP* and *Mountain States* to the definition of the phrase "just and reasonable" under HRS § 269–16. In *In re Molokai Public Utilities, Inc.*, 127 Hawai'i 234, 277 P.3d 328 (2012), this court analyzed an appli-

cation for a rate increase which is factually similar to the instant case. In *In re Molokai Public Utilities, Inc.*, MPU, a subsidiary of Wai'ola's parent company MPL, also sought a water rate increase despite not having the proper permit. In analyzing the phrase "just and reasonable," this court held:

> It is the "aim of rate regulation to protect ratepayers from having to pay charges unnecessarily incurred, including those incurred as a result of the carrier's illegal activity." [*Mountain States*] at 1043. This rule clearly states that ratepayers must be protected from charges unnecessarily incurred as a result of the illegal activity. [Maui County] has failed to demonstrate how any charges were unnecessarily incurred from MPU's [operation] without a proper permit.... If a utility's conduct is illegal, but the utility does not incur any unnecessary expenses as a result of its conduct, the conduct has no effect on whether the utility's rates are "just and reasonable."

*Id.* at 237, 277 P.3d at 331. Thus, this court clearly articulated that in order for a charge to be considered unjust and unreasonable, the charge must be based on expenses unnecessarily incurred as the result of illegal activity. *Id.*

In the instant case, Maui County has not demonstrated how the rate approved by PUC was unjust and unreasonable. Simply alleging Wai'ola does not have the proper permit to service the Kualapu'u area is not enough to prove the rate was unjust and unreasonable. As was the case in *In re Molokai Public Utilities, Inc.*, Maui County has not demonstrated how the lack of a CPCN for the Kualapu'u area resulted in unnecessary expenses that would not have occurred had Wai'ola complied with law. Maui County has failed to demonstrate how PUC's approval of a rate increase was not "just and reasonable." *Id.*

**B. PUC did not err in relying on the settlement.**

■ Maui County contends PUC erred in relying on the settlement between Wai'ola and the Consumer Advocate because PUC did not adequately consider the burden of the

higher rates on Wai'ola's customers. In *In re Molokai Public Utilities, Inc.*, this court held that "PUC's reliance on the settlement agreement is subject to a degree of deference.... [A]lthough PUC decisions 'are not presumptively valid, ... an agency's discretionary determinations are entitled to deference, and an appellant has a high burden to surmount that deference.'" *Id.* at 238, 277 P.3d at 332 (quoting *Paul's Elec. Serv.*, 104 Hawai'i at 419, 91 P.3d at 501) (brackets omitted; first ellipsis added).

■ In the instant case, Maui County argues that PUC, "as well as the Consumer Advocate, should have examined whether the proposed rates impose an unreasonable burden on [Wai'ola's] customers." However, "[t]he methodology employed by the PUC in its rate-making determination lies within its expertise and discretion." *In re Hawaii Elec. Light Co.*, 67 Haw. 425, 431, 690 P.2d 274, 279 (1984).

> It is not theory but the impact of the rate order which counts. If the total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry is at an end. The fact that the method employed to reach that result may contain infirmities is not then important.

*In re Hawaiian Tel. Co.*, 67 Haw. 370, 381, 689 P.2d 741, 749 (1984) (quoting *Fed. Power Comm'n v. Hope Natural Gas Co.*, 320 U.S. 591, 602, 64 S.Ct. 281, 88 L.Ed. 333, (1944)).

**C. PUC did not err in approving Wai'ola's depreciation expense.**

■ Maui County contends Wai'ola's "depreciation expense of $107,490 should have been rejected by [PUC] because this figure is not supported by the evidence in the record." In its Order, PUC stated that "upon careful review of the full record, [PUC] finds reasonable $107,490 in depreciation expense at present rates[.]" PUC spent eight pages of its order analyzing the validity of the depreciation expense. PUC directly addressed the concerns of Maui County:

> With respect to [Maui County's] specific concerns, [Wai'ola's] responses generally appear to be reasonable. For instance, with respect to the 12–inch water main, the confusion created by [Wai'ola] through its

... responses wherein it mistakenly referred to a line that was not built, was sufficiently addressed during the Hearing. While [Wai'ola] should have rectified the confusion earlier (i.e., possibly in its rebuttal testimony), [Wai'ola] should not be penalized for a mistake, which was clarified prior to the close of the record. With respect to the Maunaloa Reservoir, the repairs to the reservoir (the basis of the depreciation expense) were made years before [Wai'ola's] parent acquired MPU and, thus, the repairs were made to serve [Wai'ola's] customers. While the record indicates that the asset is being used by MPU (which is being accounted for in this proceeding), there is no question that this [Wai'ola] asset is used and useful for the provision of utility service to [Wai'ola's] customers. Moreover, [Wai'ola's] explanation regarding the differences in depreciated assets between the independent auditor's report and [Wai'ola's] witness appears credible. In its explanation, [Wai'ola] stated that an auditor for financial purposes "may take the position that a fully depreciated plant should not be reflected as [an] asset and also shown in the same amount as accumulated depreciation ... [while] [f]or regulatory purposes, ... it is correct to reflect plant that is still in use as both plant and accumulated depreciation."

(Ellipses added.)

■ Maui County argues that Wai'ola "did not submit any credible or reliable evidence" to justify the depreciation expense. Maui County does not argue that PUC applied the wrong legal standard, but instead challenges PUC's judgment of the record. "However, in deference to the administrative agency's expertise and experience in its particular field, the courts should not substitute their own judgment for that of the administrative agency where mixed questions of fact and law are presented." *Camara v. Agsalud*, 67 Haw. 212, 216, 685 P.2d 794, 797 (1984). Given the standard of review, PUC was within its discretion to decide the reasonableness of the depreciation expense based on the evidence before it.

### D. PUC did not err in approving Wai'ola's insurance expense.

■ Maui County similarly contends PUC erred in approving $16,000 in insurance expenses because that figure is not supported by the evidence in the record. Maui County argues the proper insurance expense supported by the record is $7,792. However,

[t]he Consumer Advocate states that insurance expense of $16,000 should not be reduced. The Consumer Advocate asserts that [Wai'ola's] consultant confirmed that the $7,792 amount shown on Exhibit 10.10 was an amount for four months and did not represent a full year of costs. Moreover, according to the Consumer Advocate, upon discovery, "[Wai'ola] chose not to increase its test year estimate from $16,000 in spite of the increase in the actual accruals which would have provided an increase in the annual allocated insurance amount to $23,396."

With this in mind, PUC found that

[Wai'ola's] clarification provided in its opening and reply briefs that the $7,792 figure proposed by [Maui County] represents a four month total (ended October 31, 2010) as opposed to a full year is credible and supported by the record. Moreover, the [PUC] notes that the $16,000 estimate for insurance expense is approximately $3,556 or 18.8% less than [Wai'ola's] historic three-year average of $19,556 for the years 2006 through 2008.

PUC's decision to approve the $16,000 insurance expense was not erroneous. It was based on evidence in the record and clarification by Wai'ola.

### E. PUC did not err in approving Wai'ola's cost of sales expense.

■ Maui County contends PUC erred in approving a cost of sales expense of $135,132. Maui County argues that this approval by PUC was in error because it was even higher than the $114,389 agreed upon by Wai'ola and the Consumer Advocate. In approving the cost of sales expense of $135,132, PUC found

[a]s noted [previously], since [Wai'ola] does not have its own source of water [Wai'ola] must purchase water from MPU and

DHHL to provide water utility service to its customers. In addition, [Wai'ola] pays MPU for water treatment services. On September 23, 2010, [PUC] issued its final decision and order in Docket No. 2009–0048, MPU's rate case. In Docket No. 2009–0048, increased MPU's rates for services provided to [Wai'ola] resulting in revenues of $58,458 and $42,332 for water provided at the Kualapuu Tap and water treatment services, respectively. These amounts represent charges that [Wai'ola] will be paying MPU to provide water utility service to [Wai'ola's] customers. To not account for these known and approved increased amounts would be unreasonable and unjust since the increased rates are for services that benefit [Wai'ola's] customers and directly impact [Wai'ola's] cost of sales expense. Due to MPU's increased rates for water and water treatment and the cost of water purchased from DHHL, [Wai'ola's] cost of sales expense for the Test Year is $135,132.

Because the court "should not substitute [its] own judgment for that of the administrative agency" and because PUC relied on evidence in the record to determine the proper cost of sales expense, there was no reversible error in approving the $135,132 cost of sales expense. *Camara,* 67 Haw. at 216, 685 P.2d at 797.

### F. PUC did not err in approving $225,000 in total regulatory expenses.

■ Maui County contends PUC abused its discretion in approving $45,000 in regulatory expenses for the test year, or $225,000 in total regulatory expenses over five years. Maui County argues PUC should have reduced the regulatory fees by one-third because Wai'ola's attorneys submitted bills that were not itemized. Maui County cites to *Hawaii Ventures, LLC v. Otaka, Inc.,* 116 Hawai'i 465, 173 P.3d 1122 (2007), for the proposition that the party requesting attorneys' fees must provide a detailed bill describing the substance of the work claimed.

PUC considered this argument below but ultimately followed the reasoning set forth by Wai'ola. PUC summarized Wai'ola's efforts to distinguish *Hawaii Ventures* as follows:

1. *Hawaii Ventures* and the other cases cited by the County are civil court cases where the reimbursement of the receiver's and attorney's fees was at issue. The reason block billing was rejected in *Hawaii Ventures* was because there were two types of attorney's fees in the case—attorney's fees on certain activities were subject to recovery while attorney's fees on other activities were not to be recovered. However, fees included in regulatory expense in this and other commission proceedings are all reimbursable if reasonable.

2. Reimbursement of fees in *Hawaii Ventures* and the other cases cited by the County were backward looking. For rate-making purposes, ascertaining reasonable regulatory expenses is forward looking. Similar to other expenses used to determine rates to be collected prospectively, the reasonableness of the expenses may be demonstrated with historical data and comparisons with other utilities and rate proceedings.

PUC agreed *Hawaii Ventures* is not applicable to the instant case, stating: "Upon review, [PUC] finds reasonable $45,000 in regulatory expense at present rates.... [PUC] agrees with Wai'ola's argument that application of *Hawaii Ventures* is inappropriate."

PUC and Wai'ola are correct in that *Hawaii Ventures* involved distinguishing between compensable and non-compensable fees. *Id.* at 476, 173 P.3d at 1133. The court in *Hawaii Ventures* held that the description of attorneys' fees were "so vaguely generic that it is impossible to distinguish, in light of the circumstances in this case, between compensable and non-compensable claims." *Id.* at 478, 173 P.3d at 1135.

■ In the instant case, there is no need to distinguish between compensable and non-compensable fees. PUC correctly held that "all *reasonable* rate case activities are reimbursable under regulatory expense." HRS § 269–16 allows PUC to set rates which are "just and reasonable." "The language of [HRS § 269–16] grants to [PUC] broad discretionary power in the area of rate regula-

tion, … providing that rates set are 'just and reasonable.'" *In re Kauai Elec. Div. of Citizens Util. Co.* 60 Haw. 166, 179, 590 P.2d 524, 534 (1978). Therefore, the standard for allowing attorney's fees to be passed on to the consumer in a rate case proceeding differs from the standard used in civil cases where there is a need to distinguish between types of fees. As such, PUC did not err in holding *Hawaii Ventures* distinguishable from the instant case and approving $225,000 in total regulatory expenses over five years.

**IV.**

The February 8, 2011 Decision and Order filed by the Public Utilities Commission is hereby affirmed.